Luc A. Despins (LD 5141)
Andrew M. Leblanc (*pro hac vice* to be filed)
Jessica L. Fink (JF 6399)
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

Counsel for Alper Holdings USA, Inc.,
Debtor and Debtor in Possession

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 07-12148 (BRL) |
| ALPER HOLDINGS USA, INC., | : | |
| | : | District Court |
| | : | Case No. 08-02428 (PAC) |
| Debtor. | : | |

-------------------------------------------------------x

**OBJECTION OF ALPER HOLDINGS USA, INC. IN OPPOSITION TO MOTION OF
ADKINS CLAIMANTS TO WITHDRAW THE BANKRUPTCY REFERENCE FOR
OBJECTION OF ALPER HOLDINGS USA, INC. TO PROOFS OF CLAIM (CLAIM
NOS. 14, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 27, 28) FILED BY ADKINS CLAIMANTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    A.    The Adkins Claims Objection is Core and Should Be Determined by the Bankruptcy Court .............................................................................................. 4

    B.    Denial of the Withdrawal Motion Will Prevent Forum Shopping ...................... 10

    C.    Judicial Efficiency Supports Denial of the Withdrawal Motion ......................... 11

    D.    Denial of the Withdrawal Motion Will Prevent Delay and Reduce Costs .......... 12

    E.    Denial of the Withdrawal Motion Will Promote Uniformity of Bankruptcy Administration ..................................................................................................... 12

    F.    No Other Over-riding Considerations Warrant Removal .................................... 13

CONCLUSION ....................................................................................................................... 14

## TABLE OF AUTHORITIES

### CASES

Drew v. Worldcom, Inc. (In re Worldcom, Inc.), No. 06-03407, 2006 WL
2129309 (S.D.N.Y. July 26, 2006) ..................................................................... 10

Enron Corp. v. Lay (In re Enron Corp.), 295 B.R. 21 (S.D.N.Y. 2003) ..................................... 8

Enron Power Mktg., Inc. v. Nevada Power Co. (In re Enron Corp.), No. 03-09332,
2004 WL 3015256 (S.D.N.Y. Dec. 28, 2004) ........................................................... 5

Enron Power Mktg., Inc. v. Santa Clara (In re Enron Corp.), No. 01-07964, 2003
WL 68036 (S.D.N.Y. Jan. 8, 2003) ..................................................................... 9

Ernst & Young v. Bankr. Servs., Inc. (In re CBI Holding Co., Inc.), 311 B.R. 350
(Bankr. S.D.N.Y. 2004) ............................................................................... 5

Forman v. Nat'l Union Fire Ins, Co. (In re County Seat Stores. Inc.), No. 01-
02966, 2002 WL 141875 (S.D.N.Y. Jan. 31, 2002) ..................................................... 4

Gioia Gucci v. Gucci, No. 96-08216, 1997 WL 122838 (S.D.N.Y. Mar. 17, 1997) ................... 9

Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville
Forest Prods. Corp., 896 F.2d 1384 (2d Cir. 1990) ................................................... 5

Hassett v. BancOhio Nat'l Bank (In re CIS Corp.), 172 B.R. 748 (S.D.N.Y. 1994) ................... 9

In re Ames Dept. Stores, Inc., No. 90-11233, 1991 WL 259036 (S.D.N.Y. Nov.
25, 1991) ............................................................................................. 3

In re Chateaugay Corp., 111 B.R. 67 (Bankr. S.D.N.Y. 1990) ......................................... 6, 8

In re Dow Corning Corp., 215 B.R. 346 (Bankr. E.D. Mich. 1997) ..................................... 6, 8

In re Saltire Indus., Inc., No. 07-03622, 2007 WL 1815450 (S.D.N.Y. June 22,
2007) ................................................................................................. 7

In re Times Circle East, Inc., No. 95 CIV. 2838, 1995 WL 489551 (S.D.N.Y.
Aug. 15, 1995) ....................................................................................... 7

Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.), 136 B.R. 59
(S.D.N.Y. 1992) ...................................................................................... 9

Kittay v. Ernst & Young, LLP (In re Kleinert's, Inc.), No. 04-05286, 2004 WL
1878787 (S.D.N.Y. Aug. 19, 2004) ................................................................. 8, 11

Leslie Fay Cos. v. Falbaum (In re Leslie Fay Cos.), No. 97-02244, 1997 WL
555607 (S.D.N.Y. Sept. 4, 1997) ..................................................................... 4

Lone Star Indus., Inc. v. Rankin County Econ. Dev. Dist. (In re New York Trap
Rock Corp.), 158 B.R. 574 (S.D.N.Y. 1993) ......................................................... 11

McMahon v. Providence Capitol Enters., Inc. (In re McMahon), 222 B.R. 205
    (S.D.N.Y. 1998) .................................................................................................... 4

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4
    F.3d 1095 (2d Cir. 1993) ............................................................................... 4, 11

Schneider v. Riddick (In re Formica Corp.), 305 B.R. 147 (S.D.N.Y. 2004) ......................... 8, 10

South Street Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d
    755 (2d Cir. 1996) ............................................................................................... 4

The Hunnicutt Co. v. The TJX Cos. (In re Ames Dept. Stores, Inc.), 190 B.R. 157
    (S.D.N.Y. 1995) ................................................................................................... 9

U.S. Lines, Inc. v. U.S. Lines Reorganization Trust, 262 B.R. 223 (S.D.N.Y.
    2001) .................................................................................................................... 6

## STATUTES

28 U.S.C. § 157(b) ...................................................................................................... 4

28 U.S.C. § 157(b)(2) .................................................................................................. 3

28 U.S.C. § 157(b)(2)(B) ......................................................................................... 5, 6

28 U.S.C. § 157(b)(5) ....................................................................................... 5, 7, 8, 10

28 U.S.C. § 157(d) ...................................................................................................... 3

Alper Holdings USA, Inc. ("Alper"), debtor and debtor in possession in the above-captioned chapter 11 case, submits this objection to the Motion of the Personal Injury Claimants to Withdraw the Bankruptcy Reference (together with the memorandum of law filed in support thereof, the "Withdrawal Motion") with respect to the Objection of Alper Holdings USA, Inc. (the "Adkins Claims Objection") to Proofs of Claim (Claim Nos. 14, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 27, 28) filed by the Adkins Claimants[1] (the "Adkins Claims"),[2] and, in support thereof, respectfully represents as follows:

## PRELIMINARY STATEMENT

The Withdrawal Motion should be denied because, among other things, it is premature.  While the Adkins Claimants do not cite a single case in support of their argument that the reference should be withdrawn at this stage in the consideration by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of the Adkins Claims Objection, a long line of cases from this Court make clear that, even if the Adkins Claimants may be entitled to a jury trial at some point in the future (which Alper submits is most likely to be unnecessary), that does not require withdrawal of the reference now.  Furthermore, the Withdrawal Motion is a blatant attempt by the Adkins Claimants to forum shop to avoid disallowance of their claims – the outcome that is certain to result from the Bankruptcy Court's consideration of the Adkins Claims Objection.  The Bankruptcy

---

[1]    The Adkins Claimants include Donald Adkins, Kristi Adkins, Hunter Adkins, Chad Beard, Patricia Beard, Emily Beard, Eric Christian, Peyton Christian, Jennifer Casteel, Timothy DeLoach, Kimberly DeLoach, Paxton DeLoach, Anthony Fambrough, Keysha Fambrough, Autumn Fambrough, Shonda Heflin, John Christopher Stiver, Sydney Stiver, David Heimbach, Jodie Heimbach, Kassidy Heimbach, Dawson Heimbach, Mason Heimbach, Scott Herkimer, Darcie Herkimer, Samuel Herkimer, Steven Jones, Melissa Jones, Mya Jones, Barry Piland, Christie Piland, Luke Piland, Travis Wood, Amy Wood and Lauren Wood, James Dakota Stewart, Charity Comeaux, and Joshua Campbell (collectively, the "Adkins Claimants").

[2]    The proofs of claim filed by Donald, Kristi and Hunter Adkins are attached hereto as Exhibit A.  The other Adkins Claims are substantially identical (other than the name of the claimant) to the proofs of claim filed by Donald, Kristi and Hunter Adkins.

Court has held with respect to three sets of claimants asserting claims that are nearly identical to those of the Adkins Claims,[3] including two sets brought by the same counsel to the Adkins Claimants, that Alper, as a matter of law, is not liable for claims, including personal injury claims, relating to environmental contamination caused by one of its subsidiaries, Saltire Industrial, Inc. ("Saltire").  In expunging and disallowing the Flake Claims, Holt Claims, and Armstrong Claims, the Bankruptcy Court held that, as a matter of law, "Alper cannot be liable, directly or indirectly, for claims arising out of or relating to Saltire's alleged contamination or remediation in Dickson County, Tennessee."[4]

Only after the Bankruptcy Court disallowed all other similar claims on consideration of initial dispositive motions did the Adkins Claimants move to withdraw the reference with respect to their copy-cat claims.  This Court should deny the Withdrawal Motion as each of the factors that must be considered weighs heavily against withdrawal of the reference:

- First, proceedings adjudicating the allowance and disallowance of proofs of claim are core proceedings, even when a proof of claim asserts personal injury and/or wrongful death claims, the liquidation of which may be non-core.

---

[3]    Ray Flake and Cathy Flake (together, the "Flake Claimants") asserted against Alper proofs of claim numbers 20 and 21 (the "Flake Claims"); Harry Holt, Beatrice Holt, Sheila Holt-Orstead, Jasmine Orsted, Bonita Holt, O'Brian Holt, Brandon Holt, Patrick Holt, Bianca Bentley, Demetrius Holt and David Brown (collectively, the "Holt Claimants") asserted against Alper proofs of claim numbers 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45 (the "Holt Claims"); Charlotte Armstrong and Jon Armstrong (together, the "Armstrong Claimants") asserted against Alper proofs of claim numbers 12 and 13 (the "Armstrong Claims");

[4]    See Memorandum Decision And Order Granting Objection Of Alper Holdings USA, Inc. To Proofs Of Claim (Claim Nos. 20 And 21) Filed By Flake Plaintiffs, dated January 15, 2008 (Docket No. 123) (the "Flake Decision"), attached hereto as Exhibit B, at 12; Memorandum Decision And Order Granting Objections Of Alper Holdings USA, Inc. To Proofs Of Claim Filed By (i) Armstrong Plaintiffs And (ii) Holt Plaintiffs, dated February 25, 2008 (Docket No. 157)(the "Armstrong/Holt Decision"), attached hereto as Exhibit C, at 12.

- <u>Second</u>, the Withdrawal Motion is a transparent effort at forum shopping in order to avoid the Bankruptcy Court disallowing the Adkins Claims.

- <u>Third</u>, withdrawal of the reference would not promote judicial efficiency as the Bankruptcy Court has repeatedly heard and disallowed claims similar to those of the Adkins Claimants and is best situated to oversee the resolution of Adkins Claims until such time as a trial becomes necessary.

- <u>Fourth</u>, withdrawal of the reference will cause unnecessary delay and increased costs because the parties will have to re-litigate issues with which the Bankruptcy Court is already well-versed and, indeed, has ruled upon.

- <u>Fifth</u>, withdrawal would not promote uniformity of bankruptcy administration because the Bankruptcy Court has already ruled on substantially identical legal issues as those raised in the Adkins Claims Objection.

- <u>Finally</u>, there are no over-riding considerations that warrant withdrawing the reference to this Court.

## <u>ARGUMENT</u>

The Adkins Claims, like all claims filed in a bankruptcy case, have been referred to the Bankruptcy Court by this Court's standing order providing that all cases filed pursuant to the federal courts' bankruptcy jurisdiction shall be so referred.  <u>See</u> Standing Order of Referral of Cases to Bankruptcy Judges, Southern District of New York, dated July 10, 1984.  The Adkins Claimants only seek permissive withdrawal pursuant to 28 U.S.C. § 157(d), which provides as follows:  "The district court may withdraw, in whole or in part, any case or proceeding referred [to the Bankruptcy Court] under this section, on its own motion or on timely motion of any party, **for cause shown**."  28 U.S.C. § 157(d) (emphasis added); ); <u>see, e.g.</u>, <u>In re Ames Dept. Stores, Inc.</u>, No. 90-11233, 1991 WL 259036, at *2 (S.D.N.Y. Nov. 25, 1991) (finding party seeking discretionary withdrawal has burden to show "cause" exists under section 157(d)).  In determining whether "cause" has been shown,

district courts must weigh: (1) whether the matter is a core proceeding under 28 U.S.C. § 157(b)(2); (2) whether the request is the product of forum shopping; (3) what is the most efficient use of judicial resources; (4) what is the delay and what are the costs to the parties; (5) what will promote uniformity of bankruptcy administration; and (6) other related factors. See South Street Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 762 (2d Cir. 1996).[5]  The Adkins Claimants have failed to show that any of these factors weigh in favor of withdrawal of the reference.

**A.     The Adkins Claims Objection is Core and Should Be Determined by the Bankruptcy Court**

The threshold inquiry in determining permissive withdrawal is "whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." Orion Pictures Corp., 4 F.3d at 1101.[6]  While the "fact that a claim is core does not necessarily decide the withdrawal analysis . . . it does strongly suggest that there is no cause to withdraw the reference." Forman v. Nat'l Union Fire Ins. Co. (In re County Seat Stores, Inc.), No. 01-02966, 2002 WL 141875, at *6 (S.D.N.Y. Jan. 31, 2002) (noting that withdrawal would have the effect of losing "the advantage of [the bankruptcy court's] views" on the dispute sought to be withdrawn).  Allowance or disallowance of the Adkins Claims against Alper is unquestionable a "core" proceeding.

---

[5]     See also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993) (stating that in evaluating "cause" courts will consider "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law") (citations omitted).

[6]     See also Leslie Fay Cos. v. Falbaum (In re Leslie Fay Cos.), No. 97-02244, 1997 WL 555607, at *2-3 (S.D.N.Y. Sept. 4, 1997) (describing "whether the claim is core or non-core" as "most important" factor); McMahon v. Providence Capitol Enters., Inc. (In re McMahon), 222 B.R. 205, 207 (S.D.N.Y. 1998) ("preliminary inquiry should focus on whether the adversary proceeding is core or non-core").

Congress enacted a non-exhaustive list of core matters that bankruptcy judges "may hear and determine." 28 U.S.C. § 157(b). Among the matters that Congress defined as "core" were "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(B). Employing this language, Courts in the Second Circuit have repeatedly held that proceedings to determine the allowance or disallowance of claims are core matters. See Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp., 896 F.2d 1384, 1389 (2d Cir. 1990); Enron Power Mktg., Inc. v. Nevada Power Co. (In re Enron Corp.), No. 03-09332, 2004 WL 3015256, at *5 (S.D.N.Y. Dec. 28, 2004); Ernst & Young v. Bankr. Servs., Inc. (In re CBI Holding Co.), 311 B.R. 350, 362 (Bankr. S.D.N.Y. 2004). The Adkins Claims Objections seeks to disallow the Adkins Claims because, as a matter of law, they are legally insufficient and facially deficient.[7] See Adkins Claims Objection, attached hereto as Exhibit D (without exhibits), ¶¶ 19-27. As such, because the Adkins Claims Objection falls within the clear language of Section 157(b)(2)(B), adjudication of the Adkins Claims Objection is unquestionably a core proceeding.

Ignoring the clear statutory language and well-settled precedent, the Adkins Claimants rely on 28 U.S.C. §§ 157(b)(2)(B)[8] and (b)(5)[9] to contend that the Adkins Claims Objection is a non-core proceeding. Their reliance on these sections is misplaced.

---

[7]    The Adkins Claims are insufficient as a matter of law because the Adkins Claimants, by neglecting to attach any support for the Adkins Claims, failed to satisfy their burden to establish their entitlement to the claim against Alper. Furthermore, the Adkins Claimants cannot and have not alleged that Alper has any liability under any theory since Alper had no relationship with Saltire during the time of the contamination and Alper, as required under Tennessee law, owed no duty to the Adkins Claimants before, during or after the environmental remediation in Dickson, Tennessee.

[8]    In relevant part, 28 U.S.C. § 157(b)(2)(B) states that core proceedings include "allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan . . . but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."

In relying on 28 U.S.C. § 157(b)(2)(B), the Adkins Claimants ignore a "critical distinction in § 157(b)(2)(B) between the fundamental jurisdiction of bankruptcy courts over proceedings involving the allowance or disallowance of claims, including personal injury and wrongful death claims, versus the liquidation or estimation thereof for the purpose of distributions."  In re Chateaugay Corp., 111 B.R. 67, 76 (Bankr. S.D.N.Y. 1990). While 28 U.S.C. § 157(b)(2)(B) expressly excludes from the definition of core proceedings "*the liquidation or estimation* of contingent or unliquidated personal injury tort or wrongful death claims for purposes of distribution in a case under title 11" (emphasis added), this Court "has recognized the authority of the Bankruptcy Court to apply . . . dispositive legal defenses in the allowance of claims, including personal injury claims."  U.S. Lines, Inc. v. U.S. Lines Reorganization Trust, 262 B.R. 223, 234 (S.D.N.Y. 2001); see also In re Dow Corning Corp., 215 B.R. 346, 360 (Bankr. E.D. Mich. 1997) ("The sole intent of the exclusionary clause [in 28 U.S.C. § 157(b) (2)(B)] is to protect a personal injury claimant's right to trial *if that right is shown to exist*.")(emphasis added); In re Chateaugay Corp., 111 B.R. at 76 ("the bankruptcy court must have jurisdiction to make the threshold determination of whether as a matter of law, a claim exists which can be asserted against the debtor, even if that claim sounds in personal injury or wrongful death").  The Withdrawal Motion is, therefore, premature.  A proceeding to determine whether to disallow even a personal injury claim as a matter of law is a core proceeding that the Bankruptcy Court has jurisdiction to hear because such a proceeding determines, in turn, if any right to trial exists.  In re Dow Corning Corp., 215 B.R. at 361.  By the Adkins Claims Objection, Alper is seeking disallowance of the Adkins Claims, not liquidation or estimation of the Adkins Claims.  See

---

[9]      28 U.S.C. § 157(b)(5) states: "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending."

id. (motion for summary judgment regarding personal injury claims is "a core proceeding which [the bankruptcy court] may legally hear and determine").  As such, this matter is a core proceeding, which weighs in favor of denying the Withdrawal Motion.[10]

If the Adkins Claims survive the Bankruptcy Court's determination of the Adkins Claims Objection and proceed through pre-trial matters, then it may be proper for this Court to withdraw the reference with respect to the Adkins Claims.  It is not, however, appropriate for this Court to grant the Withdrawal Motion with respect to the Adkins Claims Objection – a dispositive motion seeking expungement and disallowance of the Adkins Claims as a matter of law and the resolution of which requires no facts to be tried – at this time as (i) the Adkins Claims are unlikely to reach trial, (ii) the Adkins Claims are, in any event, far from trial at the present procedural juncture and, if the Adkins Claim Objection is overruled, protracted discovery will necessarily occur before the Adkins Claims are ripe for trial, and (iii) the Bankruptcy Court is extremely familiar with and, indeed, has ruled upon, the issues presented in the Adkins Claim Objection.  See In re Times Circle East, Inc., No. 95 CIV. 2838, 1995 WL 489551, at *3 (S.D.N.Y. Aug. 15, 1995) (noting that, in deciding the appropriate time to withdraw a case where a jury demand has been made, courts consider "(1) whether the case is likely to reach trial, (2) whether protracted discovery with court

---

[10]     The Adkins Claimants' reliance on the Order Withdrawing the Reference Over Harry Holt Claims and Transferring Venue to the Middle District of Tennessee, in the Saltire bankruptcy case, is misplaced. In that case, this Court determined that the Harry Holt claims could not be liquidated by the bankruptcy court.  In re Saltire Indus., Inc., No. 07-03622, 2007 WL 1815450, at *2 (S.D.N.Y. June 22, 2007). First, unlike the Saltire decision, Alper does not seek to liquidate the Adkins Claims but instead is seeking a determination that their claims must be disallowed prior to liquidation.  Second, the Adkins Claimants have conveniently disregarded the fact that their own claims against Saltire were determined in the Bankruptcy Court.  See Stipulation and Order Approving Settlement Between and Among the Saltire Industrial, Inc. Creditors Liquidating Trustee and the Holders of Claim Numbers 241, 242, 243, 244, 245, 247, 249, 250, 251, 252, 253, 254, 255, 257 and 258 Fixing an Aggregate Allowed Claim for All of the Claim Holders Listed Herein, attached hereto as Exhibit E, ¶ 1.  Finally, as noted above, the Holt Claims against Alper have already been disallowed by the Bankruptcy Court on a motion substantially similar to the Adkins Claims Objection.

oversight will be required, and (3) whether the bankruptcy court has familiarity with the issues presented").

Similarly, the Adkins Claimants cannot rely on 28 U.S.C. § 157(b)(5) because that section deals only with where a trial of a claim must be heard, not adjudication of a claim as a matter of law. Section 157(b)(5) states that "the district court shall order that personal injury tort and wrongful death claims shall be *tried* in the district court in which the bankruptcy case is pending." 28 U.S.C. § 157(b)(5) (emphasis added). As the Chateaugay court held:

> The statute unequivocally states that the forum for **trying** a personal injury tort or wrongful death claim is limited to the district court. However, there is no such proscription for summarily disposing of claims which have no basis in law . . . where a trial would not be necessary.

In re Chateaugay Corp., 111 B.R. at 76 (emphasis added). While the Adkins Claimants cite not a single case in support of their argument that the bankruptcy reference should be withdrawn with respect to the Adkins Claims Objection – a dispositive pleading filed at a preliminary stage of claim litigation far in advance of any ultimate liquidation or trial of the Adkins Claims – a multitude of cases make clear that withdrawal of the reference with respect to pre-trial matters (including dispositive motions) is not the favored course. See, e.g., Id., In re Dow Corning Corp., 215 B.R. at 360 (finding protections provided to personal injury claimant entirely procedural in nature and merely specify where trial is to take place "**if** a personal injury claimant is entitled to the enumerated form of process – a trial"); Kittay v. Ernst & Young, LLP (In re Kleinert's, Inc.), No. 04-05286, 2004 WL 1878787, at *3 (S.D.N.Y. Aug. 19, 2004) ("judicial uniformity and efficiency will be promoted by allowing the Bankruptcy Court to continue to manage [an] action **until such time as the case becomes ready for trial**") (emphasis added); Schneider v. Riddick (In re Formica Corp.),

305 B.R. 147, 151 (S.D.N.Y. 2004) ("While the plaintiff has a right to a jury trial, such a

right does not compel withdrawing the reference until the case is ready to proceed to trial.");

Enron Corp. v. Lay (In re Enron Corp.), 295 B.R. 21, 27 (S.D.N.Y. 2003) ("The case law is

clear that a district court is not compelled to withdraw a reference simply because a party is

entitled to a jury trial."); Enron Power Mktg., Inc. v. Santa Clara (In re Enron Corp.), No. 01-

07964, 2003 WL 68036, at *6 (S.D.N.Y. Jan. 8, 2003) (same); Gioia Gucci v. Gucci, No. 96-

08216, 1997 WL 122838, at *1 (S.D.N.Y. Mar. 17, 1997) (noting that "[w]hile there is no

question that this case must return to the District Court if and when there is a jury trial, at the

present infant stage of the proceeding the issue of withdrawal is discretionary and turns

largely on considerations of judicial economy" and denying motion to withdraw the

reference.); The Hunnicutt Co. v. The TJX Cos. (In re Ames Dept. Stores, Inc.), 190 B.R.

157, 160-61 (S.D.N.Y. 1995) (denying motion to withdraw the reference to hear dispute upon

which movant was allegedly entitle to jury trial where "[t]he case is not yet ready for trial

and [the bankruptcy judge's] familiarity with the circumstances of the Ames bankruptcy and

the [relevant agreements] continues to promote the smooth and efficient resolution of [the

movant's] claim" and concluding "[i]ndeed, for this Court to become familiar with the facts

and law of this case would duplicate much of what [the bankruptcy judge] has already

accomplished."); Hassett v. BancOhio Nat'l Bank (In re CIS Corp.), 172 B.R. 748, 761

(S.D.N.Y. 1994) (denying motion to withdraw the reference with respect to non-core claim

on which movant had right to jury trial because "[j]udicial efficiency and uniformity will be

promoted by allowing the bankruptcy court, already familiar with the underlying action, to

manage the proceedings until the case becomes ready for trial, at which time removal to this

Court will be required"); Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.), 136

B.R. 59, 61 (S.D.N.Y. 1992) ("A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts.").  Because the Adkins Claims Objection asks the Bankruptcy Court to adjudicate whether the Adkins Claims are sufficient as a matter of law, no right to trial exists and the language of 28 U.S.C. § 157(b)(5) is wholly irrelevant at this point in time.[11]

**B.**    **Denial of the Withdrawal Motion Will Prevent Forum Shopping**

The fact that the Withdrawal Motion is a transparent effort at forum shopping weighs heavily in favor of denial.  This Court has previously noted that suspicious timing and circumstances surrounding the filing of a motion to withdraw the reference can reflect a "strong inference" that movants are attempting to seek "a more favorable forum for litigation of the substantive motions currently pending in the [b]ankruptcy [c]ourt."  Drew v. Worldcom, Inc. (In re Worldcom, Inc.), No. 06-03407, 2006 WL 2129309, at *3 (S.D.N.Y. July 26, 2006) (denying a motion to withdraw the reference as untimely where such motion was made three weeks after one of the debtors sought to move for summary judgment on an objection to plaintiff's claim); see also In re Formica Corp., 305 B.R. at 151  (noting that the filing of a withdrawal motion raised "the specter of forum shopping" because it was filed only after a motion to dismiss movant's complaint against certain directors of the debtors was filed in the bankruptcy court).  Here, circumstances surrounding the filing of the Withdrawal Motion smack of forum shopping.

---

[11]    In the unlikely event that the Bankruptcy Court were to break ranks with its prior decisions disallowing substantially identical claims as a matter of law and permit the Adkins Claims to survive dismissal, and the matter became ripe for trial, then, and only then, would this statute apply.

The Bankruptcy Court has already expunged the Flake Claims, Armstrong Claims, and Holt Claims, which were nearly identical to the Adkins Claims. Significantly, like the Adkins Claims, *all* of these claims contended that Alper is liable for injuries allegedly caused by contamination from hazardous waste used at a plant operated by Saltire. In expunging and disallowing the Flake Claims, Armstrong Claims, and Holt Claims, the Bankruptcy Court held that, as a matter of law, "Alper cannot be liable, directly or indirectly, for claims arising out of or relating to Saltire's alleged contamination or remediation in Dickson County, Tennessee." Recognizing that they faced a similar fate, the Adkins Claimants filed their Withdrawal Motion in an obvious attempt to "shop" for a forum that might be more amenable to their claims. Such a crude attempt to seek a more favorable forum cannot be countenanced. See Lone Star Indus., Inc. v. Rankin County Econ. Dev. Dist. (In re New York Trap Rock Corp.), 158 B.R. 574, 577 (S.D.N.Y. 1993) (denying a motion to withdraw the reference and transfer an adversary proceeding made just days after the bankruptcy court had entered a decision adverse to the movant).

**C.    Judicial Efficiency Supports Denial of the Withdrawal Motion**

Judicial efficiency also weighs in favor of denial of the Withdrawal Motion as the Bankruptcy Court has presided over this case for approximately eight months (and the bankruptcy case of Alper's former subsidiary, Saltire, for nearly 3 1/2 years), has ruled on claims nearly identical to the Adkins Claims, and has heard the various, and constantly changing, factual and legal issues asserted by the Adkins Claimants. Given the Bankruptcy Court's history and familiarity with the parties and the factual and legal issues in this chapter 11 case, judicial efficiency will be promoted if the Bankruptcy Court adjudicates the Adkins Claims Objection. See Orion Pictures Corp., 4 F.3d at 1101 (recognizing efficiencies in having bankruptcy courts hear cases involving facts with which the bankruptcy court is

already familiar and legal issues within the Bankruptcy Court's expertise); <u>Kittay v. Ernst & Young, LLP</u>, 2004 WL 1878787, at *3 (denying motion to withdraw reference where the action was not trial ready because the bankruptcy court was familiar with the claims and issues before it).

**D.    <u>Denial of the Withdrawal Motion Will Prevent Delay and Reduce Costs</u>**

Prevention of delay and reduction of costs also weigh in favor of disallowance of the Withdrawal Motion.  A hearing to determine the Adkins Claims Objection is scheduled before the Bankruptcy Court for April 3, 2008.  Granting the Withdrawal Motion will likely delay the determination on the legal sufficiency of the Adkins Claims for a substantial period of time and require the parties to brief this Court on the issues underlying the Adkins Claims.  It will be far more cost effective and efficient to allow the Bankruptcy Court to make the determination as to the legal sufficiency of the allegations supporting the Adkins Claims than to waste additional time and expense re-pleading the issues before this Court.

**E.    <u>Denial of the Withdrawal Motion Will Promote Uniformity of Bankruptcy Administration</u>**

Uniformity of bankruptcy administration also weighs in favor of disallowance of the Withdrawal Motion.  The Bankruptcy Court is extremely familiar with the Adkins Claims as it has already resolved several claims based on substantially the same underlying facts and identical legal theories.  The consistent administration of bankruptcy law would best be served by allowing the Bankruptcy Court to hear the Adkins Claims Objection and determine the legal sufficiency of the Adkins Claims.

**F.**     **<u>No Other Over-Riding Considerations Warrant Removal</u>**

   While this Court may consider other factors in its decision to allow or deny withdrawal, the Adkins Claimants have failed to articulate any legitimate over-riding concern that would warrant withdrawal.  The Adkins Claimants have failed to make the requisite showing of cause and, therefore, the Withdrawal Motion should be disallowed.

* * *

   In sum, when examining these factors collectively, it is apparent that the Withdrawal Motion should be denied.  Not only is this fundamentally a "core" matter that should be decided by the Bankruptcy Court, but the Adkins Claimants' efforts to forum shop and cause unnecessary delay and expense should not be rewarded.

## CONCLUSION

WHEREFORE, Alper respectfully requests that this Court deny the

Withdrawal Motion, and grant such other and further relief as may be just and proper.

Dated: New York, New York
      March 19, 2008

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By:  /s/ Luc A. Despins
      Luc A. Despins (LD 5141)
      Andrew M. Leblanc (*pro hac vice* to be filed)
      Jessica L. Fink (JF 6399)
      1 Chase Manhattan Plaza
      New York, New York  10005
      (212) 530-5000

*Counsel for Alper Holdings USA, Inc,*
*Debtor and Debtor in Possession*

# Exhibit A

B 10 (Official Form 10) (04/07)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>ALPER HOLDINGS USA, INC | Case Number<br>07-12148 (BRL) |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503    **FILED - 00014**

| Name of Creditor (The person or other entity to whom the debtor owes money or property)<br>**Donald, Kristi and Hunter Atkins** | ☑ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. ~~ALPER HOLDINGS USA, INC~~<br><br>07-12148 (BRL) | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|
| Name and address where notices should be sent<br>**Donald, Kristi and Hunter Atkins**<br>c/o Barrett Law Office, P A , One Burton Hills<br>Blvd , Ste 380, Nashville, TN 37215<br>Telephone number  (615) 665-9990 | ☐ Check box if you have never received any notices from the bankruptcy court in this case<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court | |

| Last four digits of account or other number by which creditor identifies debtor | Check here ☐ replaces<br>if this claim ☐ amends    a previously filed claim, dated _____ |
|---|---|

**1  Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned

- ☑ Personal injury/wrongful death
- ☐ Taxes
- ☐ Retiree benefits as defined in 11 U S C § 1114(a)
- ☐ Other _____

- ☐ Wages, salaries, and compensation (fill out below)
  - Last four digits of your SS # ____
  - Unpaid compensation for services performed
  - From _____ to _____
    (date)            (date)

**2  Date debt was incurred**  02/27/2004     |  **3  If court judgment, date obtained**

**4  Classification of Claim**  Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case was filed  See reverse side for important explanations

Unsecured Nonpriority Claim  $_____

☐ Check this box if  a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or c) none or only part of your claim is entitled to priority

**Unsecured Priority Claim**

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority

Amount entitled to priority  $_____

Specify the priority of the claim

- ☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)
- ☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U S C § 507(a)(4)
- ☐ Contributions to an employee benefit plan - 11 U S C § 507(a)(5)

**Secured Claim**

☐ Check this box if your claim is secured by collateral (including a right of setoff)

Brief Description of Collateral
- ☐ Real Estate     ☐ Other _____
- ☐ Motor Vehicle

Value of Collateral  $_____

Amount of arrearage and other charges at time case filed included in secured claim if any  $_____

- ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U S C § 507(a)(7)
- ☐ Taxes or penalties owed to governmental units - 11 U S C § 507(a)(8)
- ☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**5  Total Amount of Claim at Time Case Filed**  $_____ Contingent/ Unliquidated/Disputed    unknown
  (unsecured)           (total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of all interest or additional charges

**6  Credits**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim

**7  Supporting Documents**  Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available, explain  If the documents are voluminous, attach a summary

**8  Date-Stamped Copy**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

RECEIVED
SEP 1 9 2007
CLAIMS PROCESSING CENTER
USBC, SDNY

| Date<br>9/14/2007 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney if any)<br><br>Patrick Barrett Attorney for Creditor |
|---|---|

*Penalty for presenting fraudulent claim*  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------

ALPER HOLDINGS USA, INC ,

                   Debtor

vs

DONALD, KRISTI AND HUNTER ATKINS
c/o Barrett Law Office, P A
One Burton Hills Blvd , Suite 380
Nashville, TN 37215

                   Creditor

--------------------------------------------------------

.    Chapter 11

Case No  07-12148 (BRL)

## SUPPORTING DOCUMENT ATTACHMENT

     Creditor's  personal injury claim arises from contamination by hazardous waste including Trichloroethylene ("TCE"), and industrial solvent used at a manufacturing facility in Dickson, Tennessee and is based on the independent acts and/or omissions of Alper Holdings USA, Inc  in connection with said contamination

## POWER OF ATTORNEY

     A Power of Attorney authorizing Barrett Law Office P A  to file this claim is attached hereto

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------
ALPER HOLDINGS USA, INC ,

                          Debtor

vs

DONALD, KRISTI and HUNTER ATKINS    :
c/o Barrett Law Office, P A
One Burton Hills Blvd , Suite 380
Nashville, TN 37215


                          Creditor
------------------------------------------------------------

Chapter 11

Case No  07-12148 (BRL)


## STATEMENT OF RELATED CLAIMS

Filed simultaneously herewith are 18 other Proof of Claims arising out of contamination by hazardous waste including Trichloroethylene ("TCE"), an industrial solvent used at a manufacturing facility in Dickson, Tennessee and is based on the independent acts and/or omissions of Alper Holdings USA, Inc  in connection with said contamination

# CONTRACT TO HIRE ATTORNEY

Client(s) Donnie & Kristi Atkins                    Date  2-27-04

1    **MATTER INVOLVED**  Clients retain PROVOST★UMPHREY LAW FIRM, L.L.P., BARRETT LAW OFFICE, P.A., LYNN AGEE, ESQ., TODD & SPENCER LAW FIRM, and/or CHARLES CUNNINGHAM, ESQ ("The Firms" collectively) to represent clients in any claim arising from trichloroethylene or other contamination in Dickson County, Tennessee.

2    **CLIENT FUNCTIONS**  Clients agree to perform the following functions  A) to pay The Firms for the performance of such legal services and to pay for all expenses incurred in connection therewith, as specified in paragraphs 3 and 4 below, B) to cooperate fully with The Firms and to provide all information known by or available to the clients which may aid The Firms in representing the clients in this matter

3    **LEGAL FEES.**  The Firms collectively shall receive as compensation ▬▬▬▬▬▬▬ of all amounts recovered through insurance or otherwise from the party, or parties, responsible for the injuries and damages sustained by clients as a result of the trichloroethylene contamination described above

4.    **EXPENSES**  The Firms shall not be liable for costs and expenses of any kind and shall be reimbursed by clients from any recovery for necessary expenses advanced and paid for by them in connection with the prosecution of this claim  Such expenses may include charges made by court reporters, expert witnesses and investigators.  Additionally, clients agree to reimburse The Firms for all out of pocket expenses from any recovery including, but not limited to charges for filing and serving papers, depositions, transcripts, witness fees, photocopy expenses, long distance phone calls, and travel expenses  In the event there is not a recovery, clients shall not be responsible for any expenses.  Clients agree that associate counsel may be employed at the discretion and expense of The Firms and that any attorney so employed may be designated to appear on clients' behalf to undertake their representation in this matter.  Clients further authorize The Firms to deduct and pay medical expenses of this claim from their recovery directly to the person or firms to whom the expenses are due

5    **NO GUARANTEES.**  The Firms have made no guarantees regarding the outcome of this matter and all expressions about the outcome are only opinions

6    **TERMINATION OF AGREEMENT**  The Firms may withdraw from this matter if clients fail to honor the agreement, or if after investigation, The Firms determine available evidence is insufficient to warrant further representation or there is a lack of available sums to satisfy a successful claim  Clients may terminate contract subject to the reimbursement of expenses, and payment of fees equal to ▬▬▬▬▬ of the most recent offer of settlement

7.    **DISPUTE RESOLUTION**  Any disputes relating to interpretation, enforcement or alleged breach of this agreement shall be submitted to binding arbitration in Nashville, Tennessee, under the auspices of the American Arbitration Association  Judgment on any arbitration award may be entered by any court of competent jurisdiction  This includes any derivative claims, inclusive of legal negligence, fraud, duress, misappropriation of funds, or any other claims against Provost★Umphrey Law Firm L.L.P., Barrett Law Office, P.A, Lynn Agee, Esq, Todd & Spencer Law Firm, and/or Charles Cunningham, Esq any of their partners, associates, or other representatives, arising out of the legal services made the basis of this contract  This agreement shall be interpreted under the laws of the State of Tennessee.

**UNDERSTOOD AND AGREED TO AND COPY RECEIVED:**

_Kristi Atkins_
Client

_Donnie Atkins_
Client

_Michael Hamilton_
Provost★Umphrey Law Firm, L L P

_(signature)_
Barrett Law Office, P.A.

_Lynn Agee_
Lynn Agee, Esq

_Charles Cunningham_
Charles Cunningham, Esq

_(signature)_
Todd & Spencer Law Firm

# **Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

Chapter:   11

In re:

ALPER HOLDINGS USA, et al.

Debtors.

Case No.:   07-12148 (BRL)
            Jointly Administered

## MEMORANDUM DECISION AND ORDER GRANTING OBJECTION OF ALPER HOLDINGS USA, INC. TO PROOFS OF CLAIM (CLAIM NOS. 20 AND 21) FILED BY FLAKE PLAINTIFFS

Alper Holdings USA, Inc. ("Alper"), the debtor, seeks entry of an order disallowing and expunging (the "Objection") claim numbers 20 and 21 (the "Flake Claims") filed by Cathy and Ray Flake (together, the "Flake Plaintiffs"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Flake Plaintiffs oppose the Objection asserting that the Flake Claims have been sufficiently pled in their corresponding proofs of claim to put Alper on notice of the claims filed against it.  For the reasons set forth below and at oral argument, the Court finds Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire Industrial, Inc.'s ("Saltire") alleged contamination or remediation in Dickson County, Tennessee.  Therefore, the Flake Claims are disallowed.

## BACKGROUND

### History of Alper and Saltire

The Flake Claims arise in connection with groundwater contamination and environmental problems that arose in the mid-1980's in Dickson County, Tennessee, that were allegedly caused, in part, by Saltire.  From approximately 1964 until March 1985, Saltire operated a plant in Dickson County (the "Dickson Plant") where it made automotive tire valves and associated products and where Trichloroethyleme ("TCE") was used as a degreaser.  The Dickson Plant ceased operations in March 1985.  *See* Objection, at ¶12.

The existence of potential environmental problems including contamination of groundwater in Dickson County has been widely known since at least the mid-1980s. From 1985 through August 2004, Saltire worked under the auspices of state and federal environmental regulatory authorities in a multi-million dollar investigation and remediation of environmental contamination at the Dickson Plant site. *See Id.*, at ¶¶ 12-13. Despite the well-publicized contamination, in 2002, the Flake Plaintiffs purchased property within 8 miles of the Dickson Plant for use as a *water bottling facility*. *Id.* at ¶ 19 (emphasis supplied).

In 1992, <u>seven years</u> after the Dickson Plant closed and <u>decades</u> after the alleged disposal of industrial wastes in Dickson County first occurred, Alper became the controlling shareholder of an entity known as First City Industries Inc. ("First City") (an incidental and indirect parent of Saltire, through First City's then-pending chapter 11 case).[1] Although Alper ultimately became the direct parent of Saltire, Alper had no relationship with Saltire during the period the Dickson Plant was operating and during the period Saltire allegedly disposed of industrial waste in Dickson County.[2] As an incidental parent holding company of Saltire, Alper did not become a

---

[1]    As a creditor of First City, Alper received shares of stock as a stock for debt distribution in the reorganized First City on account of its allowed claim pursuant to First City's plan of reorganization. *See* Transcript of January 8, 2008 Hearing (the "Hearing"), at 25-26.

[2]    Since 2003, numerous parties have filed lawsuits against Alper, among others, for alleged personal injury and property damage claims related to the environmental contamination in Dickson, Tennessee (collectively, the "Tennessee Actions"). The Tennessee Actions include three actions known as the "Dickson Actions": (1) Flake v. Saltire Industrial, Inc. f/k/a Scovill, Inc.; Schrader-Bridgeport International, Inc. f/k/a Schrader Automotive, Inc.; Alper Holdings USA, Inc.; Tomkins PLC; the City; William Andrews; Lewis Edward Kilmarx and John Doe(s) 1-10 (the "Flake Action"), which forms the basis of the Flake Claims; (2) Armstrong v. Saltire Industrial, Inc. f/k/a Scovill, Inc.; Schrader-Bridgeport International, Inc f/k/a Schrader Automotive, Inc.; Alper Holdings U.S.A., Inc.; Tomkins PLC; ArvinMeritor, Inc.; William Andrews; Lewis Edward Kilmarx and John Doe(s) 1-10 (the "Armstrong Action"); and (3) Adkins v. Schrader-Bridgeport International, Inc.; Alper Holdings USA, Inc.; ArvinMeritor, Inc; the City; the County; William Andrews; Lewis Kilmarx and John Does (the "Adkins Action" and collectively with the Armstrong Action and the Flake Action, the "Dickson Actions"). The other Tennessee Actions are: (1) Harry Holt, et al. v. Scovill, Inc., n/k/a Saltire Industrial, Inc.,

successor in interest to Saltire.  *See Id.* at  ¶ 13.  On August 17, 2004, in part to deal with

liabilities related to the Dickson Plant, Saltire filed a voluntary petition for relief in this Court

under chapter 11 of the Bankruptcy Code.[3]

On or about March 7, 2007, plaintiffs in the Dickson Actions, including the Flake

Plaintiffs, settled with Saltire for the aggregate amount of $1.5 million.  In addition, on or about

October 13, 2006, the Flake Plaintiffs entered into a settlement and release agreement with two

of the other defendants to the Flake Action, the City of Dickson, Tennessee (the "City") and the

County of Dickson, Tennessee (the "County"), whereby the Dickson Plaintiffs agreed to release

the City and County – the entities that owned and operated the Dickson Landfill – from their

claim in return for, among other things, 75% of any recoveries that the City and County received

from Saltire.[4]  *See Id.*, at  ¶¶ 14-15.

**Alper Chapter 11 Case and
the Flake Claims**

On July 13, 2007, Alper filed for relief under chapter 11 of the Bankruptcy Code.  On or about

September 19, 2007, the Flake Plaintiffs filed the "contingent, unliquidated, and disputed" Flake

Claims asserting *See Id.*, at ¶ 9.  The fourth amended complaint (the "Complaint") filed by the

Flake Plaintiffs in the Flake Action accompanied each of the Flake Claims.[5]  Among other

---

Alper Holdings USA, Inc., Ebbtide Corporation and the City and County of Dickson, Tennessee (the "Holt Action"); (2) Lavenia Holt, et al. v. Scovill, Inc. et al (the "Lavenia Holt Action"); and (3) Dunbar v. Saltire Industrial, f/k/a Scovill, Inc. et al., pending in the Circuit Court of Dickson County, Tennessee (the "Dunbar Action").

[3]    *In re Saltire Industrial, Inc.*, Case No. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004).

[4]    The City dropped its claim against Saltire, and the Flake Plaintiffs effectively received no recovery from the City.  The County's claim against Saltire continues to be litigated, but Alper asserts that the Flake Plaintiffs' share of any recovery the County receives from Saltire will be de minimis.

[5]    In addition to the Complaint, the Flake Plaintiffs included the following paragraph in the supporting documents attached to the Flake Claims:

things, the Complaint, which the Flake Plaintiffs relied upon entirely to support their claims, alleged that the Flake Plaintiffs suffered personal and property damage due to the intentional or negligent failing of Alper (along with 20 other defendants) to "adequately monitor, control, supervise and/or monitor the disposal of the TCE at all locations throughout Dickson." *See* Complaint, at ¶¶ 31-36. However, nowhere in their Complaint do the Flake Plaintiffs allege specific negligent acts or causes of action against Alper; rather, they rely on six broadly pled causes of action asserted generally against the "defendants." *See Id.*, at ¶¶ 37-71.

On November 14, 2007, Alper filed the Objection alleging that the Flake Claims were both baseless and facially deficient based on the following: (a) Alper had no connection or relationship to Dickson County or the Dickson Plant before it became the indirect controlling shareholder of Saltire in 1992 – at least two decades after any alleged contamination first occurred and at least seven years after the Dickson plant closed; (b) by their own admission, the Flake Plaintiffs did not perform any investigation or due diligence with respect to the water quality and contamination, which had been widely reported beginning in the mid-1980's; and (c) to the extent that the Flake Plaintiffs were attempting to assert claims against Alper on a theory that Alper was the alter ego of Saltire, such claims must be disallowed because (i) alter ego claims that Saltire may have had against Alper were property of the estate and were released pursuant to Saltire's plan of reorganization (the "Saltire Plan") and (ii) even if such claims were not released pursuant to the Saltire Plan, no alter ego claims could be asserted against Alper because Saltire was a publicly traded company during the entire time that it operated the Dickson

---

> Creditor's property and personal damage claim arises from contamination by hazardous waste including Trichloroethyleme ("TCE"), and industrial solvent used at a manufacturing facility in Dickson, Tennessee and is based on the independent acts and/or omissions of Alper Holdings, USA, Inc. in connection with said contamination.

*See* Supporting Document Attachment to Flake Claims.

Plant and Alper did not exercise any dominion or control over Saltire's operations as required to support such claims.  *See* Objection, at ¶¶ 16-21.

On December 27, 2007, the Flake Plaintiffs responded to the Objection (the "Response") claiming that the Flake Claims should not be dismissed because *inter alia* (a) the Flake Plaintiffs' proofs of claim contained sufficient allegations to support their claims against Alper, and (b) the Flake Plaintiffs' alter ego claims against Alper could not have been released by Saltire during Saltire's bankruptcy because the Flake Plaintiff's alter ego claims were not property of Saltire's bankruptcy estate.  *See* Response, at pp. 9-21.

## DISCUSSION

It is well settled that a proof of claim executed and filed in accordance with the Federal Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of the claim.  *In re Musicland Holding Corp.*, 362 B.R. 644, 651-652 (Bankr. S.D.N.Y. 2007); *In re Castaldo*, No. 05-36349, 2006 WL 3531459, *3 (Bankr. S.D.N.Y. Dec. 7, 2006).  The filing of a proof of claim, however, is only the beginning of the Court's inquiry.

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is *"prima facie"* valid .... [and] the ... burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.

*In re Spiegel, Inc.*, No. 03-11540, 2007 WL 2456626, *15 (Bankr. S.D.N.Y. Aug. 22, 2007)

(citing *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)); *In re Lehning*, No. 05-

16245, 2007 WL 1200820, *3 (Bankr. N.D.N.Y Apr. 20, 2007); *In re MarketXT Holdings Corp.*, No. 04-12078, 2007 WL 680763, *4 (Bankr. S.D.N.Y. Mar. 1, 2007). The Court finds as a matter of law that the Flake Plaintiffs have failed to meet this burden.

In the Response, the Flake Plaintiffs contend that either (a) Alper is directly liable to the Flake Plaintiffs for negligently causing damage to their persons and/or property, or in the alternative that (b) Alper is indirectly liable as a successor or alter ego of Saltire for negligently causing damage to their persons and/or property. The Courts finds, however, that as a matter of law, Alper had no connection with the original contamination that occurred in Dickson County or Saltire's efforts to remedy that contamination and, therefore, Alper is not liable for damages stemming from those actions.

**Alper Has No Direct Liability to the Flake Plaintiffs**

To establish a direct cause of action against Alper, the Flake Plaintiffs must prove that Alper owed a duty to the Flake Plaintiffs, that the duty was breached, and that the breach was the cause in fact and proximate cause of the Flake Plaintiffs' injury or loss. *See Ham v. Hospital of Morristown, Inc*., 917 F. Supp. 531, 534 (E.D. Tenn. 1995) ("The law is well settled in Tennessee that, in a cause of action for negligence, there must first be a duty of care owed by the defendant to the plaintiff."). The alleged disposal of industrial waste and TCE in Dickson County occurred during the 1960s and 1970s, and Saltire ceased all operations and closed the Dickson Plant in March 1985. Alper, however, had no connection or relationship to Saltire or Dickson County prior to obtaining an indirect ownership interest in Saltire in 1992 – nearly two decades after the alleged contamination first occurred and at least seven years after the Dickson Plant was closed. *See* Objection, at ¶¶ 16-17.

Rather than set forth any specific factual allegations with respect to Alper, the Flake Plaintiffs attempt to hide behind a generic complaint directed at 21 different defendants without

alleging any specific liability to the Flake Plaintiffs owed on the part of Alper.  Such generic,

flypaper pleadings will not suffice.  *Robbins v. Cloutier*, 121 Fed. Appx. 423, 425 (2d Cir. 2005)

("[C]omplaints containing only conclusory, vague, or general allegations that the defendants

have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly

dismissed; [d]iffuse and expansive allegations are insufficient, unless amplified by specific

instances of misconduct."); *Little v. City of New York*, 487 F. Supp. 2d 426, 441 (S.D.N.Y.

2007) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir.2002)); *C.f. Apace*

*Communications, Ltd. v. Burke*, 07-CV-6151L, 2007 WL 4125232, *6 (W.D.N.Y. Nov. 16,

2007) (citing *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)) ("A complaint that attributes

misrepresentations to all defendants, lumped together for pleading purposes, generally is

insufficient"); *Ballew v. Black*, 06-CV-70-HRW, 2006 WL 3193379, *4 (E.D. Ky. Nov. 1,

2006) ("When a complaint (such as the one filed in this case) merely lists multiple defendants

and then describes at length the facts generally without naming the specific defendants involved

in each event, and without setting forth with particularity which acts by each defendant caused

each constitutional deprivation, the complaint is insufficient.").

Even if the Flake Plaintiffs had alleged specific liability on the part of Alper, it was

Saltire, not Alper, who operated the manufacturing facility in Dickson County.  "As a general

rule, under Tennessee law, persons do not have a duty to control the conduct of other persons to

prevent them from causing harm to others."  *McConkey v. McGhan Med. Corp.*, 144 F. Supp.

958 (E.D. Tenn. 2000); *Cooley v. Unique Vacations, Inc.*, Civ. A. 04-141-KSF, 2005 WL

2757249, *2 (E.D. Ky. Oct. 25, 2005) ("As a general rule, an actor whose own conduct has not

created a risk of harm has no duty to control the conduct of a third person to prevent him from

causing harm to another."); *Ham*, 917 F. Supp. at 534 ("In Tennessee, while all persons have a

duty to use reasonable care not to engage in conduct that will foreseeably cause injury to others,

they do not ordinarily have a duty to act affirmatively to protect others from conduct other than their own.  Thus, as a general rule in Tennessee, persons do not have a duty to control the conduct of other persons to prevent them from causing physical harm to others.") (internal citations omitted).  The only connection that the Flake Plaintiffs have been able to point to between Alper and Saltire's remediation efforts in Dickson County was (i) a management agreement (the "Management Agreement") entered into between Saltire and Alper in 1995 whereby Alper agreed to oversee certain environmental matters and (ii) an Alper employee (who was simultaneously an officer of Saltire) who the Flake Plaintiffs assert was involved in the clean-up efforts in Dickson County.  As more thoroughly set forth below, the existence of the Management Agreement and a common employee are insufficient to impose even indirect liable on Alper.  Accordingly, as it was Saltire and not Alper who operated the Dickson Plant and presumably contaminated the groundwater in Dickson County, Alper owed no duty to the Flake Plaintiffs.

At the Hearing, the Flake Plaintiffs argued, in the alternative, that Alper assumed a duty to the Flake Plaintiffs by voluntarily undertaking to oversee or control Saltire's remediation efforts in Dickson County.  *See* Transcript, at pp. 22-31.  Under Tennessee law, "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all…."  *Nidiffer v. Clinchfield R.R. Co.,* 600 S.W.2d 242, 246 (Tenn. App. 1980) (citing *Glanzer v. Shepard,* 233 N.Y. 236 (1922)).  To prevail, however, on a claim under the so-called "Good Samaritan" rule, one must demonstrate reliance on the undertaking to the detriment of the plaintiff.[6]  *See Lemar v. U.S.*, 580 F. Supp. 37, 40 (D. Tenn. 1984) ("The

---

[6]      In Tennessee, the "Good Samaritan" rule is embodied in Section 324A of the Restatements, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as

essential element for recovery under § 324A and the 'Good Samaritan' rule is reliance."). The Flake Plaintiffs, however, have set forth no facts that Alper actually participated in or oversaw Saltire's remediation in Dickson County to support a finding that Alper may have assumed a duty of care to the Flake Plaintiffs. *See* Transcript of Hearing, at p. 36. Moreover, a fundamental premise of the Flake Plaintiffs' claim is that they were unaware of environmental contamination and subsequent remediation in Dickson County. As the Flake Plaintiffs were allegedly unaware of any contamination or remediation efforts, they could not, simultaneously, have relied on Alper's alleged control of that remediation. *See, e.g., Howell v. U.S.*, 932 F.2d 915, 919 (11th Cir. 1991) ("To establish 'good samaritan' liability, therefore, appellants must show reliance… the required reliance must be actual though not necessarily specific…at a minimum, [this] requires knowledge that the allegedly negligent inspection occurred before reliance can be found and 'good samaritan' liability can attach."); *see also* Transcript of Hearing, at 28-29. Accordingly, Alper did not assume a duty of care to the Flake Plaintiffs.

### Alper Has No Indirect Liability to the Flake Plaintiffs

The Flake Plaintiffs argue, in the alternative, that Alper was indirectly liable for the negligent acts or omissions of Saltire in its remediation efforts on a theory of alter ego or piercing the corporate veil. Response, at p. 17. As noted above, to support their alter ego

---

necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

claims, the Flake Plaintiffs point to the existence of (i) the Management Agreement between Alper and Saltire, which provided, *inter alia*, that Alper would oversee certain environmental remediation for Saltire, and (ii) an Alper employee (who was simultaneously an officer of Saltire) who the Flake Plaintiffs contend was involved in the clean-up activities in Dickson County. *See* Reply of Alper Holdings USA, Inc. to Response of Ray and Cathy Flake to Objection Filed by Alper Holdings USA, Inc. to Proofs of Claim Nos. 20 and 21, at ¶¶ 8-11.

Courts are very reluctant to disregard the corporate form.[7] *See Power Integrations, Inc. v. Fairchild Semiconductor Intern.*, Inc., 233 F.R.D. 143, 145 (D. Del. 2005) ("[T]he separate and distinct corporate identities of a parent and its subsidiary are not readily disregarded, except in rare circumstances justifying the application of the alter ego doctrine to pierce the corporate veil of the subsidiary."); *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990) ("It is only the exceptional case where a court will disregard the corporate form…"); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989) ("Since it is the exceptional instance where a court will disregard the corporate form, the party who wishes the court to disregard that form 'bears the burden of proving that there are substantial reasons for doing so.'"). Under Delaware law, a corporate veil will not be pierced absent a showing of "fraud or something like it." *Mobile Oil Corp.*, 718 F. Supp. at 268; *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) ("[T]o pierce the corporate veil based on an agency or 'alter ego' theory, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.") (internal quotations omitted). Moreover, as set forth by the Supreme Court in *United States v. Bestfoods*:

---

[7]     Under New York law, the law of the state of incorporation controls the analysis of alter ego claims. *See Kalb v. Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("[b]ecause a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away."); *see also In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003).

> It is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.   Thus it is hornbook law that "the exercise of the 'control' which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary. That 'control' includes the election of directors, the making of by-laws ... and the doing of all other acts incident to the legal status of stockholders. Nor will a duplication of some or all of the directors or executive officers be fatal." Although this respect for corporate distinctions when the subsidiary is a polluter has been severely criticized in the literature, nothing in CERCLA purports to reject this bedrock principle, and against this venerable common-law backdrop, the congressional silence is audible.

524 U.S. 51, 61-62 (1998) (internal citations omitted*); See also Velez v. Novartis Pharmaceuticals Corp.*, 244 F.R.D. 243, 254 (S.D.N.Y. 2007) ("A parent corporation's possession of a controlling interest in a subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability."); *In re King*, 305 B.R. 152, 166 (Bankr. S.D.N.Y. 2004) (citing 18 Am. Jur.2d *Corporations* § 57 (2003)) (the fact that a corporation owns all or the majority of the stock of another "does not in itself destroy the identity of the latter as a distinct legal entity...and the fact that stockholders, officers or directors in two corporations may be the same persons does not operate to destroy the legal identify of either corporation**....**").

Clearly, special circumstances do not exist here that would justify the extraordinary remedy of piercing the corporate veil.  The Flake Plaintiffs have not alleged fraud or "something like it" on the part of Alper, which would be necessary to impose indirect liability.  The fact that Saltire and Alper had a common employee is insufficient to hold Alper liable for Saltire's alleged contamination or remediation.  *See Bestfoods*, 524 U.S. at 61-62; *Velez*, 244 F.R.D. at 254; *In re King*, 305 B.R. at 166.  While the Flake Plaintiffs point to certain deposition excerpts to support their contention that the employee in question, Nicholas Bauer, was an employee of

Alper only, it is clear from the record that not only was Mr. Bauer an officer of Saltire, specifically vice president of environmental affairs, *see* Transcript of Hearing, at 30, but that he was acting on behalf of Saltire and not Alper in overseeing or participating in the remediation in Dickson County. *Bestfoods*, 524 U.S. at 69 ("[C]ourts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary,...") (internal quotations omitted). Similarly, the mere existence of the Management Agreement alone is also insufficient to impose such liability where the Flake Plaintiffs have not alleged any facts to support their claim that Alper participated (negligently or otherwise) in the remediation. *United States v. Newmont, Ltd.*, No. CV-05-020-JLQ, 2007 WL 2405040 (E.D. Wash. Aug. 17, 2007). Regardless of whether the Flake Plaintiffs' alter ego claims were released under Saltire's plan of reorganization as Alper contends, the Court finds that no such claims may be asserted against Alper as a matter of law.

## CONCLUSION

For the reasons set forth above and at the hearing, the Court finds that Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire's alleged contamination or remediation in Dickson County, Tennessee. Therefore, the Flake Claims are disallowed and expunged.

It is so ordered.


Dated:  New York, New York
       January 15, 2008


                         /s/  Burton R. Lifland
                        The Honorable Burton R. Lifland
                        United States Bankruptcy Judge

# **<u>Exhibit C</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

ALPER HOLDINGS USA, et al.

                    Debtors.

Chapter:    11

Case No.:   07-12148 (BRL)
            Jointly Administered

## MEMORANDUM DECISION AND ORDER GRANTING OBJECTIONS
## OF ALPER HOLDINGS USA, INC. TO PROOFS OF CLAIM FILED BY
## (i) ARMSTRONG PLAINTIFFS AND (ii) HOLT PLAINTIFFS

Alper Holdings USA, Inc. ("Alper"), the debtor, seeks entry of an order disallowing and

expunging (i) claim numbers 12 and 13 (the "Armstrong Claims") filed by the Armstrong

Plaintiffs[1] (the "Armstrong Objection") and (ii) claim numbers 35 through 45 (the "Holt

Claims," and together with the Armstrong Claims, the "Claims") filed by the Holt Plaintiffs[2] (the

"Holt Objection," and together with the Armstrong Objection, the "Objections"), pursuant to

section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Armstrong Plaintiffs and

the Holt Plaintiffs oppose the Objections.

For the reasons set forth below and at oral argument, and in accordance with this Court's

previous Memorandum Decision on Objection of Alper to Proofs of Claim (Claim Nos. 29 and

21) filed by Flake Plaintiffs dated January 15, 2008 (the "Flake Opinion"), the Court finds Alper

cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire

Industrial, Inc.'s ("Saltire") alleged contamination or remediation in Dickson County, Tennessee.

Therefore, the Claims are disallowed.

---

[1]     The Armstrong Plaintiffs include Charlotte Armstrong and Jon Armstrong (together, the
        "Armstrong Plaintiffs").

[2]     The Harry Holt Plaintiffs include Harry Holt, Beatrice Holt, Sheila Holt-Orstead, Jasmine
        Orsted, Bonita Holt, O'Brian Holt, Brandon Holt, Patrick Holt, Bianca Bentley,
        Demetrius Holt and David Brown (collectively, the "Holt Plaintiffs").

## BACKGROUND

This Court has previously discussed the facts and circumstances preceding Alper's bankruptcy at length in the Flake Opinion, including a discussion of Saltire and the contamination in Dickson County, Tennessee, and the Court generally refers all parties to the Flake Opinion.  Briefly, the Armstrong Claims and Holt Claims, much like other claims this Court has had the opportunity to address in these proceedings, both arise in connection with groundwater contamination and environmental problems that arose as far back as the mid-1960's in Dickson County, Tennessee, that were allegedly caused, in part, by Saltire (an incidental and indirect subsidiary of Alper).  From approximately 1964 until March 1985, Saltire operated a plant in Dickson County (the "Dickson Plant") where it made automotive tire valves and associated products and where trichloroethylene ("TCE") was used as a degreaser.  The Dickson Plant ceased operations in March 1985.  Since filing for bankruptcy on July 13, 2007, numerous parties have filed claims against Alper based on, among other things, Saltire's alleged contamination in Dickson County.

### The Flake Opinion

On January 15, 2008, this Court issued the aforementioned Flake Opinion, which granted Alper's objection to certain claims asserted by Cathy and Ray Flake (together, the "Flake Plaintiffs") arising out of claims similar to those presently at issue for personal and property damages based upon the alleged contamination in Dickson County.  *In re Alper Holdings USA*, 07-12148 (BRL), 2008 WL 160203 (Bankr. S.D.N.Y. Jan. 15, 2008).  In that instance, the Flake Plaintiffs claimed (the "Flake Claims") to have suffered personal and property damage due to the intentional or negligent failing of Alper (along with 20 other defendants) to "adequately monitor, control, supervise and/or maintain the disposal of the TCE at all locations throughout Dickson."

- 2 -

As is also presently the case, the Flake Plaintiffs alleged theories of both direct and indirect liability against Alper.

This Court granted Alper's objection and disallowed the Flake Claims based in large part upon the facts that (i) Alper's ownership interest in Saltire was not only indirect but also incidental as Alper only became the controlling shareholder of Saltire in connection with the reorganization of Saltire's parent First City Industries, Inc.[3] ("First City") and (ii) Alper had no connection or relationship to Saltire or Dickson County prior to obtaining an indirect ownership interest in Saltire in 1992 – nearly two decades after the alleged contamination first occurred and at least seven years after the Dickson Plant was closed. Specifically, this Court found that Alper had no direct liability to the Flake Plaintiffs because (a) it was Saltire and not Alper that operated the Dickson Plant and, therefore, Alper owed no duty of care to the Flake Plaintiffs, and (b) the Flake Plaintiffs failed to set forth any facts that Alper actually participated in or oversaw Saltire's remediation in Dickson County that would support a finding that Alper may have assumed a duty of care to the Flake Plaintiffs. *Id.* at *4-5.

This Court also found that Alper had no indirect liability to the Flake Plaintiffs on either a theory of alter ego or piercing the corporate veil because neither the existence of a management agreement between Alper and Saltire nor a common employee between the parent and subsidiary would justify the extraordinary remedy of piercing the corporate veil as argued by the Flake Plaintiffs. *Id.* at *5-6. In so holding, the Court clearly held that "Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire's alleged contamination or remediation in Dickson County, Tennessee." *Id*. at *7. With that introduction in mind, the Court now proceeds with the claims presently at issue.

---

[3]    As a creditor of First City, Alper received shares of stock as a stock-for-debt distribution in the reorganized First City on account of its allowed claim pursuant to First City's plan of reorganization. *See* Transcript of January 8, 2008 Hearing, at 25-26.

## THE ARMSTRONG CLAIMS

On or about September 19, 2007, the Armstrong Plaintiffs filed their original proofs of claim (the "Original Proofs of Claim") asserting contingent, unliquidated, and disputed property damage claims against Alper.  The Original Proofs of Claim were based entirely upon a complaint filed by the Armstrong Plaintiffs against Alper (along with 18 other named defendants) on or about April 8, 2004 (the "Armstrong Complaint"), in which the Armstrong Plaintiffs claim to have suffered a "diminution" in the value of certain real property as a direct result of the "defendants" alleged contamination in Dickson County.  The Armstrong Complaint alleged that Alper was liable for the property damages asserted based upon (a) Alper's own "direct acts and omissions" and (b) a theory that Alper was Saltire's successor-in-interest.  While the Armstrong Complaint alleged that Alper was liable for its own direct acts, the complaint failed to detail with any specificity what those direct acts might actually entail; rather, the Armstrong Plaintiffs relied on broadly pled causes of action asserted generally against the "defendants."

On February 6, 2008, however, the Armstrong Plaintiffs, undoubtedly daunted by the Flake Plaintiffs' holding, amended the Original Proofs of Claims (the "Amended Proofs of Claim").[4]  In the Amended Proofs of Claim, the Armstrong Plaintiffs contend for the first time that they were not alleging that Alper caused or contributed to the initial contamination in Dickson County, but rather, that Alper assumed control of the remediation efforts in Dickson

---

[4]    Alper has objected to the filing of the Amended Proofs of Claim contending that the filing of the Amended Proofs of Claim some five months after the expiration of the September 21, 2007 bar date is "an impermissible amendment to the Original Armstrong Claims because they are based on a set of facts and theory of liability completely different than those asserted in the Original Armstrong Claims and there is no equitable reason to permit the late-filed claims."  Objection of Alper Holdings USA to Amendment of Proofs of Claim (Claim Nos. 12 and 13) Filed by Armstrong Plaintiffs dated February 20, 2008, at ¶ 3.

County and conducted such remediation in a negligent manner. The pleadings attached to the Amended Proofs of Claim sought to build upon the theory first introduced by the Flake Plaintiffs that Alper controlled the remediation in Dickson County (and assumed a duty to the Armstrong Plaintiffs) by further alleging that Nicholas Bauer, the same common employee of Saltire and Alper previously discussed in the Flake Opinion, oversaw the remediation in Dickson County on behalf of Alper.[5] More precisely, the Amended Proofs of Claim allege that Mr. Bauer: (a) considered himself an employee of Alper and not Saltire, (b) was hired by Alper for the sole purpose of overseeing the remediation in Dickson County, (c) represented himself as an Alper official who had responsibility for environmental matters at Saltire, and (d) operated from an office in Virginia, a jurisdiction where only Alper and not Saltire was authorized to do business.

Alper objects to the Armstrong Claims arguing that they (as reformulated in the Amended Proofs of Claims) are fundamentally the same negligent remediation claims that the Court previously dispensed with in the Flake Opinion. Additionally, Alper contends that even if all of the allegations regarding Mr. Bauer are taken as true, the Flake Plaintiffs have still failed to "allege a plausible basis for liability against Alper." Alper further contends that any claims for alter ego or successor liability must be disallowed because such claims were property of Saltire's bankruptcy estate and were released under Saltire's plan of reorganization (the "Saltire Plan").

In contrast, the Armstrong Plaintiffs claim that the Armstrong Claims should not be dismissed because *inter alia* (a) the Armstrong Plaintiffs' proofs of claim contained sufficient allegations to survive what they contend is a motion to dismiss, and (b) the Armstrong Plaintiffs'

---

[5] The Flake Plaintiffs previously alleged that Mr. Bauer was not an employee of Saltire at all, but rather was hired solely by Alper to deal with the remediation in Dickson County. The Court, however, previously held that not only was Mr. Bauer clearly an employee of Saltire (specifically, vice president of environmental affairs), but also that that he was acting on behalf of Saltire and not Alper in overseeing or participating in the remediation in Dickson County. *In re Alper Holdings,* 2008 WL 160203, at *6.

alter ego claims against Alper could not have been released under the Saltire Plan because the Armstrong Plaintiffs' alter ego claims were not property of the estate.

As previously discussed in the Flake Opinion, the fact that a parent company and its subsidiary share common employees is insufficient to impose liability on the part of the parent for acts of the subsidiary. *See United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.") (internal quotations omitted); *see In re Alper Holdings*, 2008 WL 160203, at *5-6. Regarding the roles of common or overlapping employees, the United States Supreme Court in *United States v. Bestfoods* stated that "courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary," absent a situation where a common employee might "depart so far from the norms of parental influence exercised through dual officeholding as to serve the parent, even when ostensibly acting on behalf of the subsidiary in operating the facility." 524 U.S. at 69-71; *see also In re Parmalat Securities Litigation*, 501 F. Supp. 2d 560, 588 (S.D.N.Y. 2007).

Like the Flake Plaintiffs before them, the Armstrong Plaintiffs have failed to allege any facts that would justify imposing liability on the part of Alper. Alper's ownership interest in Saltire came about merely as a result of a debt to equity swap in First City's then pending chapter 11 bankruptcy – and the Court will not make use of this incidental ownership interest to hold Alper indirectly liable for events that predated Alper's ownership interest in Saltire by nearly two decades. *See e.g., Da Silva v. Kinsho Intern. Corp.*, 210 F. Supp. 2d 241, 244 (S.D.N.Y. 2000) ("This Court agrees that a parent company should not lightly be held responsible for the acts of its subsidiaries absent proof that the parent was involved in the particular circumstances giving rise to the litigation."). Most notably, as Alper suggests in its reply, even if all of the allegations

- 6 -

regarding Mr. Bauer and Alper are taken as true, the conduct alleged still falls well short of the "depart[ing] so far from the norms of parental influence" standard set forth by the Supreme Court in *Bestfoods* as the Armstrong Plaintiffs have failed to allege any acts by Mr. Bauer that would overcome the legal presumption that he was acting on behalf of Alper and not Saltire.

Accordingly, as the conduct alleged is insufficient to overcome the legal presumption that Mr. Bauer was acting on behalf of Saltire and not Alper, the Court sees no reason to part ways with the reasoning and rationale previously set forth in the Flake Opinion.  *See, e.g., In re Manhattan Invest. Fund Ltd.*, 343 B.R. 63, 67 (S.D.N.Y. 2006) ("The law of the case is a discretionary doctrine, providing 'that where a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  While the law of the case is "a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided," nevertheless, the situations justifying reconsideration are generally limited to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (internal citations omitted); *641 Ave. of Americas Ltd. Partnership v. 641 Associates, Ltd.*, 189 B.R. 583, 588 (S.D.N.Y. 1995) ("[U]nder the law of the case doctrine, a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation.").  The Court finds no basis to impose a duty on the part of Alper – direct, indirect, assumed or otherwise – and therefore, the Armstrong Claims are disallowed.

## THE HOLT CLAIMS

Similar to the Armstrong Claims and the Flake Claims before them, the Holt Claims, which are based upon a separate complaint filed on or about December 3, 2003 (the "Holt Complaint"), assert various claims for both personal and property damage based upon, *inter alia*, Saltire's negligent contamination at the Dickson Plant and surrounding area.  Unlike the

Armstrong Plaintiffs, however, the Holt Plaintiffs allege damages based entirely upon injuries caused by the original contamination in Dickson County and not by any subsequent remediation or negligence.  Accordingly, the Holt Plaintiffs' allegations as they pertain to Alper are based entirely on a theory of alter ego liability.  In particular, the Holt Plaintiffs assert that Alper is liable as the alter ego of Saltire because (a) Alper was not merely an indirect or incidental parent of Saltire as had been previously contended, but rather was formed for the sole purpose of acquiring First City during its then pending chapter 11 proceeding, (b) Alper dominated and controlled the management and direction of Saltire to a much greater extent than previously suggested, and (c) Alper and First City diverted assets away from Saltire, which left Saltire grossly undercapitalized and eventually necessitated Saltire filing for bankruptcy protection under chapter 11 of the Bankruptcy Code in August 2004.[6]

Alper objects to the Holt Plaintiffs' alter ego and successor liability claims charging that such claims must be disallowed because (i) alter ego claims that Saltire may have had against Alper were property of the estate and were released under the Saltire Plan and (ii) even if such claims were not released pursuant to the Saltire Plan, no alter ego claims could be asserted against Alper because Saltire was a publicly traded company during the entire time that it operated the Dickson Plant and Alper did not exercise any dominion or control over Saltire's operations as required to support such claims.

In response, the Holt Plaintiffs contend that their alter ego claims against Alper were not property of the estate but rather were nondebtor third party claims that Saltire was unable to release under the Saltire Plan because *inter alia* (a) Tennessee law and not Delaware should control the analysis of alter ego claims and under Tennessee law, a debtor does not have the ability to pierce its own corporate veil, and (b) the claims asserted by the Holt Plaintiffs in the

---

[6]    *In re Saltire Industrial, Inc.*, Case No. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004).

Holt Complaint are personal to the Holt Plaintiffs and could not have been brought by any creditor of Alper.

As previously set forth in the Flake Opinion, courts are very reluctant to disregard the corporate form.[7] *See Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005) ("[T]he separate and distinct corporate identities of a parent and its subsidiary are not readily disregarded, except in rare circumstances justifying the application of the alter ego doctrine to pierce the corporate veil of the subsidiary."); *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990) ("It is only the exceptional case where a court will disregard the corporate form…"); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989) ("Since it is the exceptional instance where a court will disregard the corporate form, the party who wishes the court to disregard that form 'bears the burden of proving that there are substantial reasons for doing so.'").  Under Delaware law, a corporate veil will not be pierced absent a showing of "fraud or something like it."  *Mobile Oil Corp.*, 718 F. Supp. at 268; *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) ("[T]o pierce the corporate veil based on an agency or 'alter ego' theory, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.") (internal quotations omitted).

Under Delaware law, an alter ego cause of action constitutes a corporate right.  *See, e.g., In re Enron Corp.*, 2003 WL 1889040, at *3 ("Based on the fact that Delaware law allows a

---

[7]    While the Holt Plaintiffs suggest otherwise, it is clear under New York law that the law of the state of incorporation controls the analysis of alter ego claims and, accordingly, Delaware law controls our analysis.  *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) ("[Under New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders.") (internal quotations omitted); *Kalb v. Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("[b]ecause a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away."); *see also In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003).

subsidiary to maintain an action against a corporate parent, a Delaware court would permit a debtor corporation to assert a claim to pierce its own corporate veil"); *Pereira v. Cogan*, 00-CIV-619, 2001 WL 243537, at *19-20 (S.D.N.Y. Mar. 8, 2001) ("It may seem strange to allow a corporation to pierce its own veil, since it cannot claim to be either a creditor that was deceived or defrauded by the corporation fiction, or an involuntary tort creditor. However piercing the corporate veil and alter ego actions are allowed to prevent unjust or inequitable results; they are not based solely on a policy of protecting creditors..... [Therefore] it is not incompatible with the purposes of the doctrines to allow a debtor corporation to pursue a claim based upon such a theory.") *citing Phar-Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228, 1240 n. 20 (3d Cir. 1994); *Murray v. Miner*, 876 F. Supp. 512, 516 -17 (S.D.N.Y. 1995) ("One can only conclude that for purposes of applying federal bankruptcy law, Delaware courts would permit a debtor corporation to 'assert[ ] an alter ego claim to pierce its own corporate veil….'") (internal citations omitted). The law permits a debtor to pierce its own corporate veil because "[a]llowing the trustee or debtor-in-possession to pursue the claim avoids the prospect of creditors seeking to gain advantage over other creditors by pursuing the alter ego claims on a first-come, first-serve basis." *In re Enron Corp.*, 2003 WL 1889040, at *4.  As the Second Circuit stated in *Kalb, Voorhis & Co. v. American Fin. Corporation*, 8 F.3d 130 (2d Cir. 1993):

> [G]ranting the bankruptcy trustee exclusive standing to assert alter ego claims furthers the bankruptcy policy of ensuring that all similarly situated creditors are treated fairly; the alter ego action is based upon allegations that if proven would benefit all [the debtor's] creditors, i.e., making more assets available to satisfy [the debtor's] debts.... If [the individual creditor's] action is not stayed it would collect its claim from a pool of assets that should be available to all creditors.

*Id*. at 132.

    "Where a claim is generalized, with no particularized injury stemming from it and where the claim may be brought by any creditor, the trustee or debtor-in-possession is the appropriate

- 10 -

party to assert the claim and creditors are subject to the outcome of the action brought by the trustee or debtor-in-possession." *In re Enron Corp.*, 2003 WL 1889040, at *4; *see also Murray v. Miner*, 876 F. Supp. 512,  516 (S.D.N.Y. 1995) (An alter ego claim "belongs to the trustee if (1) under governing state law the debtor could have asserted an alter ego claim to pierce its own corporate veil, and (2) plaintiffs' claim is a general one, of the type that could be brought by any creditor of the debtor.").

While the Holt Plaintiffs have further expounded upon the successor liability and alter ego theories previously dispensed with in the Flake Opinion,[8] the Court is not persuaded. Among other things, the Holt Plaintiffs assert that (a) Alper and Saltire operated as a single economic unit maintaining the same office space and over lapping employees, and (b) Alper and First City diverted assets away from Saltire and sold of many of Saltire's most profitable businesses, leaving it grossly undercapitalized and forcing Saltire to file for bankruptcy.  Clearly, claims of gross undercapitalization and fraudulent transfer such as those averred in the Holt Complaint are of a generalized nature and do not allege a "particularized injury" specific to the Holt Plaintiffs only and not Saltire's body of creditors at large.  While this Court previously did not address whether Saltire's alter ego claims were property of the estate, *see In re Alper Holdings*, 2008 WL 160203, at * 6, it is clear based upon the conduct presently alleged that such alter ego claims were in fact property of Saltire's bankruptcy estate and, accordingly, that those alter ego claims were released under section 13.1 of the Saltire Plan.[9]  Accordingly, the Holt Claims are disallowed.

---

[8]     The same, however, cannot be said of the Armstrong Plaintiffs, where counsel for the Armstrong Plaintiffs – who previously served as counsel for the Flake Plaintiffs – essentially restated the very same arguments dismissed by the Court in the Flake Opinion.

[9]     Section 13.1(b) of the Saltire Plan states, in pertinent part:

## CONCLUSION

For the reasons set forth above and at the hearing, and for the reasons set forth in the

Flake Opinion, the Court finds that Alper cannot be held liable, directly or indirectly, for claims

arising out of or relating to Saltire's alleged contamination or remediation in Dickson County,

Tennessee.  Therefore, the Claims are disallowed and expunged.

IT IS SO ORDERED.

Dated:  New York, New York
        February 25, 2008

                                     _/s/ Burton R. Lifland_____
                                     The Honorable Burton R. Lifland
                                     United States Bankruptcy Judge

---

The Debtor . . . acquits and forever discharges Alper . . . from any
and all actions, causes of action, [and] liabilities . . . in any way
relating to the Debtor . . . that the Debtor could assert directly or
any Holder of a Claim . . . could assert derivatively or on behalf of
the Debtor or its estate . . . . Notwithstanding the foregoing, the
above release does not release claims any nondebtor third party
may hold against any of the Released Parties, except to the extent
any nondebtor third party is asserting a claim that is property of the
Debtor's Estate.

# **<u>Exhibit D</u>**

Luc A. Despins (LD 5141)
Andrew M. Leblanc (*pro hac vice*)
Jessica L. Fink (JF 6399)
MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

Counsel for Alper Holdings USA, Inc.,
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------x
In re:                         :    Chapter 11
                               :
ALPER HOLDINGS USA, INC.,      :    Case No. 07-12148 (BRL)
                               :
                               :
                    Debtor.    :
-----------------------------x

**OBJECTION OF ALPER HOLDINGS USA, INC. TO PROOFS OF CLAIM
(CLAIM NOS. 14, 15, 16, 17, 18, 19, 22, 23,
24, 25, 26, 27, 28) FILED BY ADKINS CLAIMANTS**

Alper Holdings USA, Inc. ("Alper"), debtor and debtor

in possession in the above-captioned chapter 11 case, files this

objection (the "Objection"), pursuant to section 502 of title 11

of the United States Code, 11 U.S.C. §§ 101-1532 (as amended,

the "Bankruptcy Code") and rule 3007 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") to proofs of claim

numbers 14, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 27, 28 (the

"Adkins Claims")[1] filed by the Adkins Claimants,[2] and, in support

thereof, respectfully represents as follows:

---

[1]    The Adkins Claims are attached as Exhibit A to the Declaration of
Jessica L. Fink in Support of Objection ("Fink Decl."), filed
simultaneously herewith.

## Preliminary Statement

1.    In the Adkins Claims,[3] the Adkins Claimants
assert that Alper is liable to them for personal injuries
allegedly caused by contamination from hazardous waste used at
the Dickson Plant (as defined below) because of Alper's
"independent acts and/or omissions."  See Adkins Claims,
attached as Exhibit A to Fink Decl.  This Court has already
concluded that Alper is not liable to other claimants who
asserted claims against Alper that are factually
indistinguishable from the Adkins Claims, at least with respect
to the issue of liability.  See Memorandum Decision And Order
Granting Objection Of Alper Holdings USA, Inc. To Proofs Of
Claim (Claim Nos. 20 And 21) Filed By Flake Plaintiffs, dated

---

[2]    The Adkins Claimants include Donald Adkins, Kristi Adkins, Hunter
Adkins, Chad Beard, Patricia Beard, Emily Beard, Eric Christian, Peyton
Christian, Jennifer Casteel, Timothy DeLoach, Kimberly DeLoach, Paxton
DeLoach, Anthony Fambrough, Keysha Fambrough, Autumn Fambrough, Shonda
Heflin, John Christopher Stiver, Sydney Stiver, David Heimbach, Jodie
Heimbach, Kassidy Heimbach, Dawson Heimbach, Mason Heimbach, Scott
Herkimer, Darcie Herkimer, Samuel Herkimer, Steven Jones, Melissa
Jones, Mya Jones, Barry Piland, Christie Piland, Luke Piland, , Travis
Wood, Amy Wood and Lauren Wood (collectively, the "Adkins Plaintiffs")
as well as Priscilla Fowler and Jason Stewart -- who together filed
proof of claim number 17 -- and James Dakota Stewart, Charity Comeaux,
and Joshua Campbell -- who together filed proof of claim 27 --
(collectively, the "Non-Plaintiff Adkins Claimants" and, together with
the Adkins Plaintiffs, the "Adkins Claimants").  The Non-Plaintiff
Adkins Claimants are represented by the same counsel, and have filed
substantially identical proofs of claim for personal injury/wrongful
death claims, as the Adkins Plaintiffs.  On information and belief, the
Non-Plaintiff Adkins Claimants are asserting substantially similar
claims as those asserted by the Adkins Plaintiffs and, accordingly,
this Objection addresses the claims of all of the Adkins Claimants.

[3]    Except for the name of the claimant, each of the Adkins Claims is
identical.

January 15, 2008 (Docket No. 123), the "<u>Flake Decision</u>,"
attached to Fink Decl. as Exhibit B, at 12; Memorandum Decision
And Order Granting Objections Of Alper Holdings USA, Inc. To
Proofs Of Claim Filed By (i) Armstrong Plaintiffs And (ii) Holt
Plaintiffs, dated February 25, 2008 (Docket No. 157), the
"<u>Armstrong/Holt Decision</u>," attached to Fink Decl. as Exhibit C,
at 12.  That the Adkins claims are for personal injuries, rather
than for property damages as was alleged by the Flakes and
Armstrongs, is of no moment.[4]  As with the Flakes, Armstrongs and
Holts, Alper is not liable to the Adkins Claimants for the
alleged contamination or remediation, regardless of the nature
of the harm claimed.

       2.    From the sparse allegations contained in the
Adkins Claims, it is impossible for Alper to ascertain the
specific factual or legal basis on which the Adkins Claimants
seek to hold Alper liable for the damages they allegedly
suffered.  However, on information and belief, and from the
limited information contained in the Adkins Claims, the Adkins
Claimants are asserting the same alleged claims against Alper as

---

[4]     This district has recognized the authority of the Bankruptcy Court to disallow claims, including personal injury claims, where there is no liability as a matter of law.  <u>See U.S. Lines, Inc. v. U.S. Lines Reorganization Trust</u>, 262 B.R. 223, 234-35 (S.D.N.Y. 2001) (holding that "the bankruptcy court may disallow a personal injury claim based on that court's determination that the claim, if litigated, would not be viable in light of the estate's available defenses"); <u>In re Chateaugay Corp.</u>, 146 B.R. 339, 343 (S.D.N.Y. 1992) (holding that "the Bankruptcy Court has jurisdiction to disallow legally deficient personal injury tort and wrongful death claims in the first instance").

have previously been asserted by the Adkins Plaintiffs in their complaint, filed on or about December 7, 2004 (as amended, the "Complaint," attached as Exhibit D to the Fink Decl.), against a number of defendants, including Alper.

3.    The core allegations of the Complaint are that the Adkins Plaintiffs were damaged by exposure to industrial waste, including trichloroethylene ("TCE"), that Scovill, Inc., subsequently known as Saltire Industrial, Inc. ("Saltire"), generated at the plant it operated in Dickson County, Tennessee (the "Dickson Plant") and allegedly negligently disposed of throughout Dickson County, including at the Dickson Plant and at the municipal landfill located in Dickson County (the "Dickson Landfill") and owned and operated by the City of Dickson, Tennessee (the "City") and County of Dickson, Tennessee (the "County").  In addition, the Adkins Plaintiffs allege that the Dickson Landfill was a source of contamination for a City-owned municipal water well known as DK-21, located in close proximity to the Dickson Landfill.

4.    Following the period in which any alleged contamination occurred, for a period of several years, Saltire was one of Alper's subsidiaries.  The Adkins Plaintiffs allege that Saltire's disposal of industrial waste – which occurred some time prior to 1985 – caused groundwater contamination that is the direct and proximate cause of certain personal injuries

and emotional distress of the Adkins Plaintiffs.  In the Adkins
Plaintiffs' original complaint, filed on December 7, 2004, the
Adkins Plaintiffs alleged that Alper was the "successor in
interest" to Saltire.  Following Saltire's bankruptcy filing,
the Adkins Plaintiffs recognized that such a claim, if it
existed, would be property of Saltire's bankruptcy estate and,
in January 2006, the Adkins Plaintiffs amended their complaint
to allege that Alper "is also sued herein for its own direct
acts and omissions," without specifying any facts in support of
their revised allegation.  See Complaint, Exhibit D to the Fink
Decl., at ¶17.[5]

     5.    While the Adkins Complaint fails to specify the
time period in which the alleged damages to the Adkins
Plaintiffs occurred, the following indisputable timeline clearly
demonstrates that Alper was not responsible for the alleged
damages (whenever such damages occurred):  (1) the disposal that
is alleged to have caused the contamination was committed by a
publicly traded company, occurred decades ago **and** is the subject
of a continuing government-monitored clean-up effort that began
in 1985; (2) the Dickson Plant ceased operations in 1985; and

---

[5]    The Adkins Plaintiffs have also alleged that three other out of state
corporate defendants, including a London-based publicly traded holding
company, are responsible for the contamination stemming from Saltire's
operation of the Dickson Plant.  Although the allegations are
purposefully unclear, they generally imply that all of these entities
are successors-in-interest to Scovill and therefore are liable for the
contamination associated with the Dickson Plant.  Two of these entities
have asserted indemnification claims against Alper.

(3) Alper did not have any relationship with Dickson, Tennessee until it acquired – seven years after the closure of the Dickson Plant – the equity of Saltire's former parent in 1992.  As this Court has previously recognized with respect to substantially similar claims asserted against Alper by other claimants in this case, it is simply impossible on these indisputable facts to contend that Alper bears any liability for the Adkins Claimants' alleged personal injuries and emotional distress, and such a contention cannot be maintained consistent with the limitations of Bankruptcy Rule 9011.

6.    The Adkins Claims are a baseless attempt by the Adkins Claimants to hold Alper, a holding company located in New York, New York, and a perceived corporate deep pocket, liable for alleged injuries caused by the disposal of industrial waste in Dickson County.  Alper's only relationship to Dickson County is that in the 1990s, Alper became the indirect parent of Saltire.  Alper never disposed of anything in Dickson County and never operated or engaged in any activities in Dickson, Tennessee.

7.    Not surprisingly, the Adkins Claims assert no factual basis and contain no supporting documentation, because the Adkins Claimants cannot, in good candor after a reasonable inquiry, offer any such proof.  According to Alper's books and records, Alper owes no claim to the Adkins Claimants.  However,

if Alper were merely to object to the Adkins Claims on that basis or on the basis that the Adkins Claims are facially deficient, the inevitable response by the Adkins Claimants would be to attempt to describe their claims with greater particularity.  Accordingly, Alper is filing a substantive objection in an effort to bypass a needless round of responses and objections related to the Adkins Claims.  Alper should not bear the costs of responding to a series of further reformations of the Adkins Claims when there is no legal or factual basis to impose liability on Alper for any contamination related to the Dickson Landfill or the Dickson Plant.

## Jurisdiction

8.    This Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

### Alper Chapter 11 Case

9.    On July 13, 2007 (the "Petition Date"), Alper commenced the above-captioned case under chapter 11 of the Bankruptcy Code.  Alper continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7

10.    On July 25, 2007, this Court entered an order establishing September 21, 2007 as the deadline for filing proofs of claim by Alper's known creditors.  Notice of the deadline was provided by mail to all known creditors and published in *The New York Times* (National Edition), *The Nashville Tennessean* and *The Dickson Herald*.

**Adkins Claims**

11.    On or about September 19, 2007, the Adkins Claimants filed the Adkins Claims asserting contingent, unliquidated, and disputed personal injury and wrongful death claims.  The Adkins Claimants do not describe in the Adkins Claims or the Complaint any of Alper's alleged direct acts or omissions for which Alper may be held liable.  The Adkins Claimants' failure to do so is not inadvertent, rather it is because they simply cannot do so.  Alper has never had any connection to or relationship with the Dickson Plant or the Dickson Landfill.[6]

---

[6]    Since 2003, numerous parties have filed lawsuits against Alper, among others, for alleged personal injury and property damage claims related to the alleged environmental contamination in Dickson, Tennessee (collectively, the "Tennessee Actions").  The Tennessee Actions include three actions known as the "Dickson Actions": (1) Adkins v. Schrader-Bridgeport International, Inc.; Alper Holdings USA, Inc.; ArvinMeritor, Inc; the City; the County; William Andrews; Lewis Kilmarx and John Does (the "Adkins Action"), which, on information and belief, forms the basis of the Adkins Claims; (2) Flake v. Saltire Industrial, Inc. f/k/a Scovill, Inc.; Schrader-Bridgeport International, Inc. f/k/a Schrader Automotive, Inc.; Alper Holdings USA, Inc.; Tomkins PLC; the City; William Andrews; Lewis Edward Kilmarx and John Doe(s) 1-10 (the "Flake Action"); and (3) Armstrong v. Saltire Industrial, Inc. f/k/a Scovill, Inc.; Schrader-Bridgeport International, Inc f/k/a Schrader Automotive, Inc.; Alper Holdings U.S.A., Inc.; Tomkins PLC; ArvinMeritor, Inc.;

12. The existence of potential environmental problems including contamination of groundwater in Dickson County has been widely known since at least the mid-1980s – years before Alper became the indirect parent of Saltire. <u>See</u> Exhibit E to Fink Decl. (excerpts of numerous articles regarding alleged environmental issues in Dickson County). In addition, since at least 1985, both state and federal environmental regulatory authorities have been engaged in investigative and remedial activities relating to the groundwater contamination in Dickson, Tennessee. Alper has never been subject to any environmental regulatory action in Dickson, Tennessee, for the simple reason that Alper never operated in Dickson and so has no liability for any environmental contamination. <u>See</u> Environmental Indicator Memorandum, dated February 18, 2005 (the "<u>Indicator Memo.</u>), attached as Exhibit F to Fink Decl., at 3.

13. As discussed in more detail below, these claims should be disallowed and expunged in their entirety pursuant to sections 502(b)(1) of the Bankruptcy Code because there is no

---

William Andrews; Lewis Edward Kilmarx and John Doe(s) 1-10 (the "<u>Armstrong Action</u>," and collectively with the Flake Action and the Adkins Action, the "<u>Dickson Actions</u>").

The other Tennessee Actions are: (1) Harry Holt, et al. v. Scovill, Inc., n/k/a Saltire Industrial, Inc., Alper Holdings USA, Inc., Ebbtide Corporation and the City and County of Dickson, Tennessee (the "<u>Holt Action</u>"); (2) Lavenia Holt, et al. v. Scovill, Inc. et al (the "<u>Lavenia Holt Action</u>"); and (3) Dunbar v. Saltire Industrial, f/k/a Scovill, Inc. et al., pending in the Circuit Court of Dickson County, Tennessee (the "<u>Dunbar Action</u>"). Plaintiffs in the Dunbar Action and the Lavenia Holt Action did not serve Alper and have not filed a claim in Alper's case.

theory upon which Alper could be liable for any personal injury or wrongful death claims in Dickson County, Tennessee.

**History of Alper and Saltire;**
**Allegations of Environmental Contamination**

14.  Saltire[7] was a major industrial company that began operations in the early 1800s and was listed for much of its existence – including the entire time it is alleged to have engaged in operations that contributed to environmental contamination at the Dickson Landfill – on the New York Stock Exchange.  See Debtor Saltire Industrial, Inc.'s Modified First Amended Disclosure Statement (the "Saltire DS"), Exhibit G to the Fink Decl., at 8.  From approximately 1964 until March 1985, Saltire operated the Dickson Plant where it made automotive tire valves and associated products and where TCE was used as a degreaser.[8]  The Dickson Plant ceased operations in March 1985. From 1985 through August 2004, Saltire (**not Alper**) worked under the auspices of state and federal environmental regulatory authorities in a multi-million dollar investigation and remediation of environmental contamination at the Dickson Plant site.  See Indicator Memo., attached as Exhibit F to Fink Decl., at 3.  In addition, the EPA conducted its own investigation of potential environmental contamination at the Dickson Landfill

---

[7]    Historically, Saltire was also known at different times as Scovill, Inc. and Scovill Manufacturing, Inc.

[8]    Schrader Automotive Division, a division of Saltire, operated the Dickson Plant.

and according to reports commissioned by the EPA, Saltire *may* have disposed of industrial waste, including TCE, at the Dickson Landfill in the 1960s and 1970s.[9]

15.    In 1992, seven years after the Dickson Plant closed, and decades after the alleged disposal of industrial wastes in Dickson County first occurred, Alper became the controlling shareholder of First City Industries Inc. ("First City") through First City's then-pending prepackaged chapter 11 case.  See Saltire DS, Exhibit G to Fink Decl., at 17. Accordingly, Alper became the indirect parent company of First City's subsidiaries, including Saltire.  Notably, First City was not, and Alper did not become, a successor in interest to Saltire; Saltire did not assign any of its current or prospective liabilities to First City or Alper; and First City and Alper did not acquire or assume any of Saltire's current or prospective liabilities by operation of law or otherwise.  See id.  Although Alper ultimately became the direct parent of Saltire, Alper had no relationship whatsoever with Saltire during the period the Dickson Plant was operating and during the

---

[9]    The Dickson Landfill opened in 1968 as an unregulated dump for the City of Dickson.  See Final Site Inspection Report, dated October 10, 1991, Exhibit H to Fink Decl.  While it operated as a dump, several local industries allegedly disposed of waste at the site.  See Dickson County Landfill Reassessment Report, dated March 5, 2004, Exhibit I to Fink Decl., at § 3.  In 1977, the County purchased the Dickson Landfill from the City for use as a sanitary landfill.  See id.  After 1977, the Dickson Landfill accepted only domestic wastes and industrial wastes permitted by the Tennessee Department of Environment and Conservation Division of Solid Waste Management.  Id.

period it is alleged that Saltire disposed of industrial wastes in Dickson County.

16.    On August 17, 2004, in part to deal with liabilities related to the Dickson Plant, Saltire filed a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.[10]

17.    On or about March 7, 2007, plaintiffs in the Dickson Actions, including all of the Adkins Plaintiffs, settled with Saltire – the entity that allegedly directly disposed of waste – for the aggregate amount of $1.5 million for all plaintiffs.  See Stipulation and Order Approving Settlement Between And Among the Saltire Industrial, Inc. Creditors Liquidating Trustee and the Holders of Claim Numbers 241, 242, 243, 244, 245, 247, 249, 250, 251, 252, 253, 254, 255, 257 and 258 Fixing an Aggregate Allowed Claim for All of the Claim Holders Listed Herein, the "Stipulated Order", attached as Exhibit L to the Fink Decl., at ¶ 1.

---

[10]    See In re Saltire Industrial, Inc., Case No. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004).  On March 8, 2006, an order (the "Confirmation Order", Exhibit J to the Fink Decl.) was entered in Saltire's bankruptcy case confirming Saltire's Modified First Amended Chapter 11 Plan of Liquidation (the "Saltire Plan", Exhibit K to the Fink Decl.).  The Saltire Plan, among other things, (i) provided that Alper would contribute $1,000,000 in cash to the Saltire estate and release claims it held against Saltire in excess of $2,000,000 in exchange for a general release and waiver of any claims or causes of action Saltire's estate may have held against Alper and (ii) canceled the outstanding equity interests in Saltire.  The Saltire Plan became effective on April 25, 2006.

18.    In addition, on or about October 13, 2006, the Adkins Plaintiffs (as well as the plaintiffs in the Flake Action and the Dunbar Action), entered into a settlement and release agreement with two of the other defendants to the Adkins Action, the City and County, whereby the settling plaintiffs, including the Adkins Plaintiffs, agreed to release the City and County – the entities that owned and operated the Dickson Landfill – from their claim in return for, among other things, 75% of any recoveries that the City and County received from Saltire.[11]  See Settlement Agreement And Master Release By And Between The County Of Dickson, Tennessee, The City Of Dickson, Tennessee, Plaintiffs, And Plaintiffs' Attorneys, Exhibit M to the Fink Decl., at ¶ 7.[12]  The fact that the Adkins Plaintiffs settled for such a small amount with the alleged main tortfeasor and the owners and operators of the Dickson Landfill, the alleged source of contamination to the municipal water supply, is indicative of

---

[11]    The City dropped its claim against Saltire and so the Adkins Plaintiffs received no recovery whatsoever from the City.  On January 24, 2008, Saltire entered into that certain Stipulation And Order Approving Settlement By And Between The Saltire Industrial, Inc. Creditors Liquidating Trust And The County Of Dickson, Tennessee Resolving Proof Of Claim 299 (Docket No. 421); which was approved by the Bankruptcy Court on February 1, 2008 (Docket No. 425), and pursuant to which the County agreed to settle its claim against Saltire in exchange for an allowed general unsecured claim in the amount of $400,000 ($300,000 of which will be split between the Adkins Plaintiffs, the Flake Plaintiffs and the Dunbar Plaintiffs).

[12]    Accordingly, on information and belief, the only defendants left in the Dickson Actions are ArvinMeritor, Inc., Schrader-Bridgeport International, Inc. and Tomkins PLC, all of whom the Dickson Plaintiffs allege are somehow the successor in interest to Saltire.

the general weakness of their claims and of the fact that the
Adkins Plaintiffs have named parties with no liability in an
attempt to wrangle unwarranted "nuisance-value" settlements.

### Objection To Adkins Claims

## I.   Adkins Claims Have No Basis

19.   The Adkins Claimants have attached no support
for their proofs of claim.  Accordingly, on that basis alone,
they should be dismissed as improper because they have not
satisfied their burden.[13]  The conclusory allegations in the
Complaint – which was not even attached to the Adkins Claims –
cannot be credited in testing the legal sufficiency of the
Complaint, only well-pleaded allegations of fact are afforded
such treatment.  See, e.g., In re Flag Telecom Holdings, Ltd.
Securities Litigation, 352 F. Supp. 2d 429 (S.D.N.Y. 2005)
("Conclusory allegations or legal conclusions masquerading as
factual conclusions will not suffice to prevent a motion to

---

[13]    Although the filing of a **proper** proof of claim (which the Adkins Claims
are not) constitutes prima facie evidence of the validity of the claim,
once an objecting party submits sufficient evidence to place the
claimant's entitlement at issue, **the burden of going forward with the
evidence to sustain the claim shifts to the claimant as the burden of
persuasion is always on the claimant to establish its entitlement to
the claim.**  See, e.g., Sherman v. Novak (In re Reilly), 245 B.R. 768
(2d Cir. B.A.P. 2000); judgment affirmed by In re Reilly, 242 F.3d 367
(2d Cir. 2000); In re MarketXT Holdings Corp., 2007 WL 680763, *4 n.8
(Bankr. S.D.N.Y. Mar. 1, 2007) (the claimant always "bears the ultimate
burden of persuasion").  The claimant must prove its claim by a
preponderance of the evidence.  In re Spiegel, Inc., 2007 WL 2456626,
*15 n.6 (S.D.N.Y. Apr. 22, 2007).  Here, the Adkins Claimants have not
set forth any theory of law that support their claims, nor have they
set forth any facts or evidence that support their claims.
Accordingly, they have not met this burden and their claims should be
expunged and dismissed.

dismiss"); In re Livent, Inc. Noteholders Securities Litigation,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ("The court need not credit
conclusory statements unsupported by assertions of facts or
legal conclusions and characterizations presented as factual
allegations"); In re Mediators, Inc., 1996 WL 297086 (S.D.N.Y.
June 4, 1996) (conclusory statements are "insufficient to
withstand Rule 12(b)(6) analysis, which requires the Court to
accept only well-pleaded factual allegations").

A.    Alper Was Not Related To Saltire At Time Of Contamination

20.    It is undisputed – and has been widely
publicized for decades – that there is soil and groundwater
contamination at the Dickson Landfill and the Dickson Plant.
Local, state and federal authorities have been addressing such
environmental issues since at least the mid-1980s.  See
Indicator Memo., attached to Fink Decl. as Exhibit F.  The
history of the potential contamination at the Dickson Landfill
and the Dickson Plant is long and complicated.  One fact,
however, is clear:  Alper, at no time during the alleged
disposal of industrial waste had any direct or indirect
connection or relationship with Dickson County.  Alper did not
even exist at the time of the alleged disposal and would not
come into existence until almost 20 years later.

21.    As noted above, the alleged disposal of
industrial waste at the Dickson Landfill occurred during the

1960s and 1970s.  Saltire ceased all operations and closed its facility at the Dickson Plant in March 1985.  At all times during the period of alleged disposal of industrial waste and in the period afterward when the Dickson Plant and Dickson Landfill were still being operated, Saltire was a public corporation. Alper had <u>no connection</u> or relationship whatsoever to Dickson County or to Saltire before it became the indirect controlling shareholder of Saltire in <u>1992</u> – <u>at least two decades after any alleged contamination first occurred and at least seven years after the Dickson Plant was closed</u>.  After Alper became the indirect parent of Saltire, it never participated in Saltire's business, and has never been subject to any of the regulatory actions that governed any of the investigation and remediation efforts in Dickson County.

B.    <u>Alper Cannot Be Liable Under Tennessee Law</u>

        22.    Under Tennessee law, Alper cannot be liable to the Adkins Claimants for any alleged failure to prevent the migration of TCE or to warn the Adkins Claimants about any potential environmental issues that could have led to their alleged personal injuries or emotional distress.  To establish a cause of action under Tennessee law, one must prove that the defendant owed a duty to the plaintiff, that said duty was breached, and that the breach was the cause in fact and proximate cause of the plaintiff's injury or loss.  See <u>McConkey</u>

16

v. McGhan Med. Corp., 144 F. Supp. 2d 958 (E.D. Tenn. 2000) ("As a general rule, under Tennessee law, persons **do not have a duty to control the conduct of other persons** to prevent them from causing harm to others."); Flake Decision, attached to Fink Decl. as Exhibit B, at 7 (same).  The Adkins Claimants have not alleged that Alper owed them any duty, that such duty was breached or that the breach was the cause of any injury to them. Saltire, not Alper, operated the manufacturing facility, was the owner of the Dickson property and was mandated by the federal government to clean up the site.

23.  Similarly, the Adkins Claimants cannot show that Alper engaged in remediation of contaminants in Dickson County in a way that harmed the Adkins Claimants.  As noted above, the Adkins Claims contain only the vague conclusory allegation that Alper is liable to the Adkins Claimants for personal injuries allegedly caused by contamination from hazardous waste used at the Dickson Plant because of Alper's "independent acts and/or omissions."  Looking to the Adkins Complaint for further detail is equally futile:  the only allegation against Alper contained in the Adkins Complaint is a statement in the description of the parties, in which the Adkins Claimants state Alper "is also sued herein for its own direct acts and omissions."  Adkins Complaint ¶ 17.  Other than this statement, the Adkins Complaint contains no allegations directed at conduct (or omissions) of Alper.

Beyond the above-quoted line and a series of legal conclusions contained in the recitation of the causes of action, the Complaint sets forth no specific allegations pertaining to acts or omissions of Alper, referring instead to the alleged wrongdoing of the collective "Defendants."  See, e.g., Adkins Complaint ¶¶ 23, 24, 55, 56 and 59.  This Court has already determined that such pleading is insufficient as a matter of law.  See Flake Decision, attached to Fink Decl. as Exhibit B, at 6-7 ("Rather than set forth any specific factual allegations with respect to Alper, the Flake Plaintiffs attempt to hide behind a generic complaint directed at 21 different defendants without alleging any specific liability to the Flake Plaintiffs owed on the part of Alper.  Such generic, flypaper pleadings will not suffice.") (citations omitted).

24.  In addition, under the most basic principles of corporate and tort law, Alper simply cannot be liable to the Adkins Claimants for any personal injuries or emotional distress they allegedly suffered.  As demonstrated below and, as this Court has previously determined,[14] "as a matter of law, Alper had

---

[14]    As this Court noted in the Armstrong/Holt Decision, under the law of the case doctrine, the Court's previous decisions with respect to Alper's lack of liability (as a matter of law) under the theories asserted by the Flakes, the Armstrong Plaintiffs and the Holt Plaintiffs, should govern the Court's analysis of the Adkins Claims as well.  See Armstrong/Holt Decision, attached to Fink Decl. as Exhibit C, at 7. ("[U]nder the law of the case doctrine, a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation.") (citations omitted) (alterations in original).

no connection with the original contamination that occurred in Dickson County or Saltire's efforts to remedy that contamination and, therefore, Alper is not liable for damages stemming from those actions." See Flake Decision, attached to Fink Decl. as Exhibit B, at 6.

25.    It is, thus, not possible, as a legal or factual matter, to hold Alper responsible for Saltire's disposal of waste under any theory of liability.  Any alleged personal injuries that may have been caused by Saltire's disposal of waste in Dickson is not Alper's responsibility and any such claims must be disallowed.  There exists no factual or legal basis to hold Alper liable for any alleged damages to the Adkins Claimants.[15]

---

[15]    To the extent that the Adkins Claimants may try to assert claims against Alper on a theory that Alper is the alter ego of Saltire, such claims must also be disallowed.  See Armstrong/Holt Decision, attached to Fink Decl. as Exhibit C, at 11 ("While this Court previously did not address whether Saltire's alter ego claims were property of the estate, see In re Alper Holdings, 2008 WL 160203, at * 6, it is clear based upon the conduct presently alleged that such alter ego claims were in fact property of Saltire's bankruptcy estate and, accordingly, that those alter ego claims were released under section 13.1 of the Saltire Plan.").  The Adkins Claimants cannot, consistent with the requirements of Bankruptcy Rule 9011, allege any facts that could support such a claim.  First, any alter ego claims that Saltire may have had against Alper were property of Saltire's bankruptcy estate and were released pursuant to the Saltire Plan after extensive negotiations between Alper and the Official Committee of Unsecured Creditors -- fiduciaries for all of Saltire's creditors, including the City and County.  See Id.; Saltire Plan, Exhibit K to Fink Decl. at § 13.1 (releasing Alper from any claims that Saltire could assert directly or that a creditor could assert derivatively on behalf of Saltire or its estate); Confirmation Order, Exhibit J to Fink Decl. at ¶ 18 (same).  Because Saltire released its alter ego claims, Saltire's creditors may not now assert alter ego against Alper.  See Armstrong/Holt Decision, attached to Fink Decl. as Exhibit C, at 11; Steyr-Daimler-Puch Of America Corporation v. Pappas, 852 F.2d 132 (4th Cir. 1988) (holding that where state law of

## II.  <u>Adkins Claims Facially Deficient</u>

26.  Even if the Court were to determine not to bar the Adkins Claims on their merits, the Adkins Claims must be disallowed in the form they were submitted.  It is well settled that the claimant bears the ultimate burden of proving its claim.  <u>See</u> <u>Sherman v. Novak (In re Reilly)</u>, 245 B.R. 768, 773 (2d. Cir. B.A.P. 2000) ("The ultimate burden of proof always rests upon the claimant.").  From the sparse allegations contained in the Adkins Claims, it is impossible for Alper to ascertain the specific basis therefor.  Accordingly, because of the Adkins Claimants' failure to support the Adkins Claims with proper documentation, their claims are not *prima facie* valid and

state of incorporation allowed corporation to bring alter ego action against its principals, if bankruptcy trustee, who succeeded to rights of corporate debtor, compromised such claim with the debtor's alter egos, the debtor's creditors were barred from bringing subsequent alter ego suits); <u>cf.</u> <u>St. Paul Fire & Marine Ins. Co. v. PepsiCo Inc.</u>, 884 F.2d 688, 700 (2d Cir. 1989) (holding that whether an alter ego cause of action will be included in a debtor's estate depends on whether applicable state law characterizes such an action as a creditor remedy or a corporate right).  Under Delaware law, a corporation is permitted to pierce its own veil, and so alter ego claims are property of a debtor's estate.  <u>See</u> <u>In re Enron Corp.</u>, No. 01-16034 (AJG), 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003) (citing <u>Murray v. Miner</u>, 876 F. Supp. 512, 517 (S.D.N.Y. 1995)) ("a Delaware court would permit a debtor corporation to assert a claim to pierce its own corporate veil").  Any release of such claims by a debtor, then, bars its creditors from later asserting such released alter ego claims.

Second, even if such claims were not released,  no alter ego claim can be asserted against Alper as a matter of law because Saltire was a publicly traded company during the entire time that it operated the Dickson Plant and Alper did not exercise any dominion and control over Saltire's operations as required to support an argument for applying alter ego liability.  <u>See</u> Flake Decision, attached to Fink Decl. as Exhibit B, at 12 ("Regardless of whether the Flake Plaintiffs' alter ego claims were released under Saltire's plan of reorganization as Alper contends, the Court finds that no such claims may be asserted against Alper as a matter of law.").  In fact, Alper did not even exist until 1992, seven years after the Dickson Plant was shuttered.

must instead be established by the Adkins Claimants.  See In re Allegheny Int'l, Inc., 954 F.2d 167, 175 (3d Cir. 1992) (stating that proof of claim must "set forth all the necessary facts to establish [the validity and amount of] a claim" in order to be deemed *prima facie* valid).

27.    Alper hereby requests that the Adkins Claims be disallowed in full for all purposes and expunged.  Alper has reviewed its books and records and is not aware of any amounts owed to the Adkins Claimants or the basis for any claims against it by the Adkins Claimants.  To the extent the Court is not inclined to disallow or expunge the Adkins Claims on their merits, Alper requests that the Court order that the Adkins Claimants amend the Adkins Claims, to the extent they can consistent with the obligations of Bankruptcy Rule 9011(b)(3), to provide substantive allegations that give Alper notice of the basis for the claims asserted therein.

### Notice

28.    No trustee, examiner, or creditors' committee has been appointed in Alper's chapter 11 case.  Notice of this Objection has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the plaintiffs in the Dickson Actions, including the Adkins Claimants, and the Holt Action and the Levenia Holt Action, (iii) counsel for Schrader-Bridgeport

International, Inc and ArvinMeritor, Inc., (iv) the Securities
and Exchange Commission, the Internal Revenue Service, and other
government agencies to the extent required by the Bankruptcy
Rules and the Local Bankruptcy Rules of this Court and
(v) Alper's twenty (20) largest unsecured creditors.  In light
of the relief requested, Alper submits that no other or further
notice need be provided.

### Waiver of Memorandum of Law

29.    This Objection includes citations to the
applicable authorities and does not raise any novel issues of
law.  Accordingly, Alper respectfully requests that the Court
waive the requirement that Alper file a memorandum of law in
support of this Objection pursuant to rule 9013-1(b) of the
Local Rules for the United States Bankruptcy Court for the
Southern District Of New York.

### Reservation of Rights

30.    Alper expressly reserves the right to amend,
modify or supplement this Objection and to file additional
objections to the Adkins Claims or any other claims that
claimants may assert against Alper's estate.  Alper reserves its
rights to object to the Adkins Claims on any other grounds that
Alper discovers during the pendency of this case.  Alper
expressly reserves all further substantive and/or procedural

objections they may have to the Adkins Claims identified in this Objection.

## Conclusion

WHEREFORE, Alper respectfully requests that this Court enter an order, in substantially the form attached hereto as Exhibit A, disallowing and expunging the Adkins Claims, and granting such other and further relief as may be just and proper.

Dated: New York, New York
  February 28, 2008

    **MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP**

    By: _/s/ Luc A. Despins_____
      Luc A. Despins (LD 5141)
      Andrew M. Leblanc (*pro hac vice*)
      Jessica L. Fink (JF 6399)
      1 Chase Manhattan Plaza
      New York, New York  10005
      (212) 530-5000

    Counsel for Alper Holdings USA, Inc,
    Debtor and Debtor in Possession

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------x
In re:                          :       Chapter 11
                                :
ALPER HOLDINGS USA, INC.,       :       Case No. 07-12148 (BRL)
                                :
                                :
                  Debtor.       :
----------------------------x

### ORDER DISALLOWING AND EXPUNGING PROOFS OF CLAIM
### FILED BY THE ADKINS CLAIMANTS

          Upon consideration of the Objection to Proofs of

Claim, dated February 28, 2008 (the "Objection"), filed by

Alper Holdings USA, Inc. ("Alper"), seeking entry of an order

disallowing and expunging proofs of claim numbers 14, 15, 16,

17, 18, 19, 22, 23, 24, 25, 26, 27, 28 as filed by the Adkins

Claimants (collectively, the "Claim") pursuant to section 502

of title 11 of the United States Code, 11 U.S.C. §§ 101-1532

(as amended, the "Bankruptcy Code"),and it appearing that the

disallowance and expungement of the Claim is in the best

interests of Alper, its creditors and all parties in interest;

and good and sufficient notice having been provided as set

forth in this Court's order establishing notice procedures,

including to counsel to the claimant; and it appearing that no

other or further notice need be provided; and the Court having

reviewed the Objection and having heard the statements of

counsel in support of the relief requested in the Objection at

a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Objection and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings heard before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that, pursuant to section 502 of the Bankruptcy Code, the Claim is hereby disallowed and expunged.


Dated: New York, New York
        _____, 2008


                         _____
                         United States Bankruptcy Judge

# **<u>Exhibit E</u>**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SALTIRE INDUSTRIAL, INC. | |
| Confirmed Debtor. | Case No.:  04-15389 (BRL) |

**STIPULATION AND ORDER APPROVING SETTLEMENT BETWEEN
AND AMONG THE SALTIRE INDUSTRIAL, INC., CREDITORS LIQUIDATING
TRUST AND THE HOLDERS OF CLAIM NUMBERS 241, 242, 243, 244, 245, 247, 249,
250, 251, 252, 253, 254, 255, 257, AND 258, FIXING AN AGGREGATE ALLOWED
CLAIM FOR ALL OF THE CLAIM HOLDERS LISTED HEREIN**

        Wayne R. Smith, in his capacity as the liquidating trustee for the Saltire Industrial, Inc.,

Creditors Liquidating Trust (the "Liquidating Trustee"), and the holders of claim numbers 241,

242, 243, 244, 245, 247, 249, 250, 251, 252, 253, 254, 255, 257, and 258 (collectively, the

"Dickson Plaintiffs"), by and through their respective counsel, stipulate and agree as follows:

## **RECITALS**

WHEREAS, on August 17, 2004 (the "Petition Date"), the debtor, Saltire Industrial, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Debtor's Case"), 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, on March 8, 2006, the Bankruptcy Court entered an order confirming the Debtor's Modified First Amended Plan of Liquidation (the "Plan");

WHEREAS, on April 25, 2006, the Plan became effective (the "Effective Date"). Simultaneously, the Saltire Industrial, Inc., Creditors Liquidating Trust Agreement (the "Trust Agreement") became effective, and appointed Wayne R. Smith as the Liquidating Trustee. All assets, claims and administrative responsibilities were transferred by the Debtor to the Liquidating Trustee pursuant to the Trust Agreement.

WHEREAS, the claims bar date in the Debtor's case was December 10, 2004;

WHEREAS, the Debtor, previously known as Scovill, Inc. ("Scovill"), is a Delaware corporation with offices at all relevant times in New York, New York and Westport, Connecticut;

WHEREAS, the Debtor was a manufacturer of diverse consumer products sold under a variety of brand names, including Scovill, Hamilton-Beach, Proctor-Silex, Nutone and Schrader;

WHEREAS, among the personal injury and property damage claims arising from the Debtor's prior manufacturing operations are claims related to, and arising from, alleged

conditions at the Scovill/Schrader plant in Dickson, Tennessee, which has been closed since 1985 (the "Site");

WHEREAS, the Dickson Plaintiffs, asserting personal injury and property damage claims against the Debtor, filed the following actions in the Dickson County Court:

1. On February 25, 2004, Ray Flake and Cathy Flake (the "Flakes") filed a complaint against the Debtor and other defendants for alleged property damage in the Dickson County Court (the "Flake Action", Case No. CV 1911). The Debtor is a named defendant in the Flake Action. On December 8, 2004, Ray and Cathy Flake each filed a proof of claim, in the Debtor's chapter 11 case for contingent, unliquidated and disputed property damage in an unknown amount. The Flakes' Proofs of Claim are number 251 and 252 on the Debtor's claims register.

2. On April 8, 2004, Jon and Charlotte Armstrong (the "Armstrongs") filed a complaint against the Debtor and other defendants for alleged property damage (the "Armstrong Action", Case No. CV-1929). The Debtor is a named defendant in the Armstrong Action. On December 8, 2004, Jon and Charlotte Armstrong each filed a separate proof of claim in the Debtor's chapter 11 case, asserting contingent, unliquidated and disputed property damage claims in an unknown amount. The Armstrongs' Proofs of Claim are number 249 and 250 on the Debtor's claims register.

3. On December 7, 2004, a complaint was filed in the Dickson County Court by a group of plaintiffs, Donald and Kristi Adkins, et al., (the "Adkins Action", Case No. CV 2022). The Debtor is not a named defendant in the Adkins

Action.  The plaintiffs in the Adkins Action (the "Adkins Plaintiffs") allege that they are the parents of minor children who have suffered congenital deformities, including cleft lip and/or palate, as a result of conduct by the Debtor, its predecessors and certain other parties.

4.  Each of the Adkins Plaintiffs filed a separate proof of claim in the Debtor's chapter 11 case on December 8, 2004 (collectively, the "Adkins Action Proofs of Claim").  The following claimants, who are named plaintiffs in the Adkins Action, filed individual proofs of claim in the Debtor's case:

    a.  Shonda Heflin and Sydney Stivers, claim no. 241;

    b.  Scott, Darcie and Samuel Herkimer, claim no. 242;

    c.  David, Jodie, Kassidy, Dawson and Mason Heimbach, claim no. 243;

    d.  Steven, Melissa and Mya Jones, claim no. 244;

    e.  Barry, Christie and Luke Piland, claim no. 245;

    f.  Travis, Amy and Lauren Wood, claim no. 247;

    g.  Donald, Kristi and Hunter Adkins, claim no. 253;

    h.  Anthony, Keysha and Autumn Fambrough, claim no. 254;

    i.  Timothy, Kimberly and Paxton DeLoach, claim no. 255;

    j.  Eric and Peyton Christian and Jennifer Casteel, claim no. 257;

    k.  Chad, Patricia and Emily Beard, claim no. 258.

5.  All eleven (11) of the Adkins Action Proofs of Claim were filed on the same day and are substantively the same.  Each of the Adkins Action Proofs of

Claim assert a contingent, unliquidated and disputed claim for unspecified personal injury damages.

WHEREAS, the Liquidating Trustee and the Dickson Plaintiffs (collectively, the "Parties"), through their respective counsel, have engaged in extensive negotiations surrounding the disposition of the Dickson Plaintiffs' claims; and

WHEREAS, the Parties have agreed to the allowance of claim numbers 241, 242, 243, 244, 245, 247, 249, 250, 251, 252, 253, 254, 255, 257, and 258, which will be treated and paid as one (1) Class 3 general unsecured claim, as that term is defined in the Debtor's Plan at Article 5.2.3, in the aggregate amount of $1.5 million (the "Aggregate Dickson Plaintiffs' Claim");

**NOW, THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Liquidating Trustee and the Dickson Plaintiffs hereby stipulate and agree as follows, which stipulation, when approved by final order of the Bankruptcy Court, shall constitute an order of said Court:

1.      The Parties hereby agree that the Aggregate Dickson Plaintiffs' Claim is allowed in the aggregate fixed amount of $1.5 million (the "Aggregate Dickson Plaintiffs' Claim Amount").

2.      The Dickson Plaintiffs hereby further agree that they will jointly create a separate escrow account (the "Dickson Plaintiffs' Escrow Account") for the Aggregate Dickson Plaintiffs' Claim and any distribution from the Debtor's estate in satisfaction of the Aggregate Dickson Plaintiffs' Claim Amount will be paid to the Dickson Plaintiffs' Escrow Account and will satisfy any and all obligations of the Debtor to the Dickson Plaintiffs.  The Liquidating Trustee shall have no obligation to make any payments on account of the Aggregate Dickson Plaintiffs'

Claim unless and until the information regarding the Dickson Plaintiffs' Escrow Account, including account number and wire transfer information, is provided as set forth herein.

3.      The sole obligation of the Liquidating Trustee, or any successor trustee, acting on behalf of the Debtor's estate and/or the Liquidating Trust, shall be to make any pro rata distribution on account of the Aggregate Dickson Plaintiffs' Claim, pursuant to the Plan, into the Dickson Plaintiffs' Escrow Account established by the Dickson Plaintiffs.  The Liquidating Trustee, or any successor trustee, acting on behalf of the Debtor's Estate and/or the Liquidating Trust shall not have any responsibility, liability or obligations in connection with the allocation of the Aggregate Dickson Plaintiffs' Claim Amount as between the Dickson Plaintiffs or the payment from the Dickson Plaintiffs' Escrow Account to any of the Dickson Plaintiffs.

4.      The Dickson Plaintiffs hereby release any and all claims, if any, other than the Aggregate Dickson Plaintiffs' Claim (subject to paragraphs 2 and 3 above), that they had or may have against the Debtor, the Debtor's estate, the Liquidating Trust, the Liquidating Trustee or William F. Andrews, individually in connection with, or relating to, the above referenced litigation whether known or unknown and whether asserted or unasserted.  Nothing in this Stipulation and Order shall be construed to waive, reduce, release or otherwise compromise any claims or causes of action, whether direct or derivative of the conduct of any person or entity, held by the Dickson Plaintiffs against Schrader Bridgeport International, Inc., Tomkins

PLC., Alper Holdings U.S.A., Inc., Arvinmeritor, Inc., Lewis Edward Kilmarx, individually, the City of Dickson Tennessee, or the County of Dickson Tennessee.

5. Each signatory to this Stipulation and Order represents and warrants that he or she has read and understood the terms of this Stipulation and Order.

6. Each signatory to this Stipulation and Order represents and warrants that he or she has the full authority to execute this Stipulation and Order.

7. Each Party shall bear its own costs and expenses in connection with this matter, including any and all legal fees and expenses associated with the negotiation, execution and implementation of this Stipulation and Order.

8. The Dickson Plaintiffs, including their successors, heirs, assigns, agents or representatives, hereby irrevocably waive all rights that they may have at law or in equity to allege, assert as a defense or seek contribution, indemnification or any other form of reimbursement for any litigation, action, fees, costs, or expenses, in connection with this Stipulation and Order, or the above referenced litigation, from the Liquidating Trustee, the Liquidating Trust, William Andrews, individually, or the Debtor's estate, including their successors, assigns, agents or representatives.

9. The Liquidating Trustee, the Liquidating Trust, William Andrews, individually, and/or the Debtor's estate shall be indemnified and receive reimbursement against and from all loss, liability, expense (including counsel fees) or damage which the Liquidating Trustee, the Liquidating Trust, William Andrews, individually, and the Debtor's estate may incur or sustain as a result of any litigation brought or pursued after the date of this Stipulation and Order by or on behalf of any of the

Dickson Plaintiffs or any of their successors, heirs, assigns, agents or representatives against the Liquidating Trustee, the Liquidating Trust, William Andrews, individually, and/or the Debtor in connection with the above-referenced litigation. This indemnification shall survive the death, dissolution, resignation or removal, as may be applicable, of the Liquidating Trustee, the Liquidating Trust, William Andrews, individually, and/or the Debtor's estate, or the termination of the Liquidating Trust, and shall inure to the benefit of the Liquidating Trustee's successors and assigns.

10.     This Stipulation and Order constitutes the entire agreement among the Parties and supersedes any and all prior agreements or understandings between or among the Parties or any of them arising out of or in relation to the subject matter of this Stipulation and Order and may only be amended by a writing signed by the party against whom enforcement is sought.

11.     Except as provided in paragraph 13 below, nothing in this Stipulation and Order shall be construed to create any rights in, grant any cause of action to, or provide any releases to any person or entity other than the Liquidating Trust, the Liquidating Trustee, the Debtor, the Debtor's estate, William Andrews, individually, and the Dickson Plaintiffs.

12.     The Parties agree that, other than approval by the Bankruptcy Court, no further documents or instruments shall be necessary to give full effect to this Stipulation and Order or to perfect, preserve, exercise or enforce the Parties' rights and remedies hereunder.

13.     Upon approval by the Bankruptcy Court, this Stipulation and Order shall be binding upon and inure to the benefit of the Parties hereto, and each of their successors, heirs, assigns and agents, including any successor trustee appointed or elected in the Debtor's Case.

14.     The Bankruptcy Court shall retain jurisdiction to resolve any disputes or controversies arising from or relating to this Stipulation and Order, including any action seeking to enforce the terms of this Stipulation and Order, and the Parties hereto submit to the jurisdiction of the Bankruptcy Court to resolve any such disputes or controversies.

15.     Nothing in this Stipulation and Order shall be construed as or deemed to constitute an admission of liability by the Debtor with respect to the Site, the Flake Action, the Armstrong Action or the Adkins Action or any of the Proofs of Claim identified herein.  Further, nothing in this Stipulation and Order shall be construed as or deemed to constitute an admission of liability with respect to any claims of or causes of action asserted by third parties.

16.     This Stipulation and Order is expressly subject to and contingent upon its approval by the Bankruptcy Court.  If this Stipulation and Order, or any portion hereof, is not approved by the Bankruptcy Court or if it is overturned or modified on appeal, this Stipulation and Order shall be of no further force and effect, and, in such event, neither this Stipulation and Order nor any negotiations and writings in connection with this Stipulation and Order shall be construed as or deemed to be evidence of or an admission on behalf of any party hereto regarding any claim or right that such party may have against any other party hereto.

Dated:  March 7, 2007

**LOWENSTEIN SANDLER PC**
Attorneys for the Liquidating Trustee

By:/s/ Michael S. Etkin_____
      MICHAEL S. ETKIN (ME 0570)
      1251 Avenue of the Americas, 18th Floor
      New York, New York 10020
      Telephone:  (212) 262-6700

**BARRETT LAW OFFICE, P.A.**
Attorneys for the Dickson Plaintiffs

By:/s/ Patrick Barrett_____
      PATRICK BARRETT
      One Burton Hills Blvd, Suite 380
      Nashville, Tennessee 37215
      Telephone:  (615) 665-9990

**STUTZMAN,  BROMBERG,  ESSERMAN,  &
PLIFKA, A Professional Corporation**
Bankruptcy Counsel for the Dickson Plaintiffs

By:/s/ Cliff I. Taylor_____
      SANDER L. ESSERMAN
      CLIFF I. TAYLOR
      2323 Bryan Street, Suite 2200
      Dallas, Texas 75201
      Phone: (214) 969-4900

THE ABOVE STATED AGREEMENT IS UNDERSTOOD AND AGREED TO, INDIVIDUALLY AND ON BEHALF OF THEMSELVES AND/OR MINOR PLAINTIFFS, BY THE UNDERSIGNED:

BY:    /s/ Shonda Stivers; /s/ JC Stivers
        Shonda Heflin Stivers, or Chris Stivers,
        individually and on behalf of minor child,
        Sydney Stivers

BY:    /s/ Darcie Herkimer
        Scott or Darcie Herkimer,
        individually and on behalf of minor child,
        Samuel Herkimer

BY:    /s/ David Heimbach
        David or Jodie Heimbach,
        individually and on behalf of minor children,
        Kassidy, Dawson and Mason Heimbach

BY:    /s/ Melissa Jones
        Steven or Melissa Jones,
        individually and on behalf of minor child,
        Mya Jones

BY:    /s/ Barry Piland; /s/ Christie Piland
        Barry or Christie Piland,
        individually and on behalf of minor child,
        Luke Piland

BY:    /s/Travis P. Wood
        Travis or Amy Wood,
        individually and on behalf of minor child,
        Lauren Wood

BY:    /s/ Kristi Adkins
        Donald or Kristi Adkins,
        individually and on behalf of minor child,
        Hunter Adkins

BY:    /s/ Anthony Fambrough
        Anthony or Keysha Fambrough,
        individually and on behalf of minor child,
        Autumn Fambrough

BY: _____/s/ Timothy L. DeLoach_____
        Timothy or Kimberly DeLoach,
        individually and on behalf of minor child,
        Paxton DeLoach

BY: _____/s/ Eric Christian; /s/ Jennifer Casteel_
        Jennifer Casteel or Eric Christian,
        individually and on behalf of minor child,
        Peyton Christian

BY: _____/s/ Chad Beard_____
        Chad or Patricia Beard,
        individually and on behalf of minor child,
        Emily Beard

BY: _____/s/ Jon Armstrong_____
        Jon Armstrong

BY: _____/s/ Charlotte Armstrong_____
        Charlotte Armstrong

BY: _____/s/ Ray Flake_____
        Ray Flake

BY: __/s/ Cathy Flake_____
        Cathy Flake

**SO ORDERED:**                    **DATED:**  New York, New York
                                             March 29, 2007

/s/Burton R. Lifland_____
Hon. Burton R. Lifland
U.S. Bankruptcy Judge